Page 2 of 8

Westlaw.

Not Reported in F.Supp.2d

2004 WL 1879886 (D.Or.)

(Cite as: 2004 WL 1879886 (D.Or.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Oregon.
SLOCUM ENTERPRISES, INC. and D. Barclay
Slocum Trust Agreement, Plaintiffs,
v.
NEW GENERATION DEVICES, Defendant.
**No. CV-04-201-HU.**

Aug. 23, 2004.

Christopher S. Tuttle, David P. Cooper, Kolisch Hartwell Dickinson, et al, Portland, OR, for Plaintiffs.

David J. Sprong, Michael R. Friscia, Wolff & Samson PC, West Orange, NJ, Jeffrey Stewart Love , Joseph T. Jakubek, Michael N. Zachary, Klarquist Sparkman LLP, Portland, OR, for Defendant.

FINDINGS AND RECOMMENDATION

HUBEL, Magistrate J.

*1 This is an action for patent infringement brought by Slocum Enterprises, Inc., an Oregon corporation located in Eugene and the D. Barclay Slocum Trust Agreement (hereinafter referred to collectively as "Slocum.") Slocum owns or controls U.S. Patent No. 5,304,180, entitled "Tibial Osteotomy Fixation Plate" (the '180 patent). The '180 patent was issued to the late D. Barclay Slocum on April 19, 1994. On April 12, 2001, Barclay Slocum assigned all of his patent rights to Slocum Enterprises.

The action is brought against New Generation Devices (NGD), a New Jersey corporation with its principal place of business in New Jersey. Slocum alleges in the complaint that NGD has begun making and selling a Unity Cruciate Plate (the accused product), and that the accused product is covered by the claims of the '180 patent. On June 2, 2004, NGD filed a complaint for declaratory judgment of non-infringement and invalidity in New Jersey.

NGD moves to dismiss for lack of personal jurisdiction. The court heard oral argument on August 11, 2004.

Facts

Slocum Enterprises is the worldwide exclusive licensee of patented products and methods in the field of veterinary orthopedics, among them the '180 patent and a patented surgical method, U.S. Patent No. 4,677,973, entitled Proximal Tibial Osteotomy for Leveling a Tibial Plateau, which uses the Tibial Osteotomy Fixation Plate ("the TPLO patent"). The patents are currently owned by the D. Barclay Slocum Trust Agreement.

In support of its motion to dismiss, NGD has proffered an affidavit from Alex J. Khowaylo, vice president of marketing and sales for NGD, stating that NGD commenced operations in 2001 and is incorporated under the laws of New Jersey, with its principal place of business in New Jersey. He states further that NGD does not maintain any other offices, has never been, nor applied to be, registered, licensed or qualified to do business in Oregon, has never had an ownership, partnership, joint venture or other business relationship with a person or entity in Oregon, has no bank accounts or personal property in Oregon, pays no taxes in Oregon, has no office, employees or real property in Oregon, does not manufacture its products in Oregon, has no distributor for its products in Oregon, has no telephone listing in Oregon, and has never sold a single one of the accused products in Oregon.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2004 WL 1879886 (D.Or.)

(Cite as: 2004 WL 1879886 (D.Or.))

Page 2

Alex Khowaylo states further that although NGD does maintain a website, at no time has the website been set up to enable a customer to order any of the accused products. He states that NGD has never received any orders, over the Internet or over the phone, for the accused product from anyone in Oregon.

He states that NGD's total sales in Oregon, consisting entirely of products that are not alleged to infringe the patent, were less than $6,000, and of these sales, none was made over the Internet; all involved orders received at the New Jersey office and shipped from there. There are no details in the record regarding how many items were sold in Oregon to make up this dollar volume of sales.

*2 In its opposition to the motion, Slocum has submitted the declaration of Theresa D. Slocum, widow of Barclay Slocum and current president of Slocum Enterprises (the Slocum declaration). Theresa Slocum describes the following "jurisdictional acts" in Oregon by NGD: 1) preliminary telephone negotiations between Michael Khowaylo, president of NGD and Barclay and Theresa Slocum for the sale of Slocum's patents; 2) a **catalog mailing** to Oregon veterinarians; 3) NGD's advertisements on its website; 4) an NGD advertisement for the accused product in a national magazine entitled *Veterinary Surgery*; and 5) the presence of Michael Khowaylo at annual meetings of veterinarians and veterinary trade shows throughout the United States.

Theresa Slocum states that early in 2001, shortly before Barclay Slocum died, Michael Khowaylo had telephone discussions with Barclay about a possible sale of all of Slocum's patented devices and methods, including the '180 patent that is the subject of this suit. She states that during these discussions, Michael Khowaylo was "aware of the importance of " the '180 patent and the TPLO patent. Theresa Barclay declares that after her husband died, she also spoke with Khowaylo about his purchase of the Slocum assets, but ultimately no sale took place. During these discussions, Khowaylo gave her his phone numbers in New Jersey and encouraged her to call him.

Theresa Barclay also testifies 1) that NGD has **mailed** its **catalog** to Oregon veterinarians since 2002, and certain Oregon veterinarians received NGD's most recent 2003-2004 **catalog,** which lists the accused product; and 2) that NGD advertises the accused product in a national publication entitled *Veterinary Surgery,* which is **mailed** to Oregon, 3) that Michael Khowaylo regularly travels around the United States attending trade shows and veterinary professional meetings.

NGD counters these assertions with the declaration of Michael Khowaylo. He acknowledges that he had two brief telephone conversations with the Slocums to make preliminary inquiries about the potential sale of Slocum's assets. However, NGD argues that these discussions are irrelevant to jurisdiction because 1) they were conducted by Khowaylo prior to the incorporation of NGD and thus cannot be attributed to NGD because NGD did not exist at that time; 2) they did not address the '081 patent or the TPLO patent, but rather a general sale of assets; 3) no business terms were discussed; and 4) the parties never met.

Khowaylo has attached to his declaration a copy of NGD's product catalog for 2003-04. The catalog lists 298 items, including the accused product. Khowaylo states that it was sent to three existing NGD customers in Oregon, who had previously ordered products other than the accused product. He states, however, that no one in Oregon has ever ordered or purchased the accused product.

Also attached to the Khowaylo declaration is a copy of the advertisement that appeared in the May/June 2004 issue of *Veterinary Surgery.* Khowaylo states that no sales of an NGD product were made to anyone in Oregon subsequent to the mailing of the *Journal.*

Standard  
*3 In the context of a Rule 12(b)(2) motion for lack of personal jurisdiction, the court is to take as true the allegations of the non-moving party and resolve all factual disputes in its favor. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1107 (9th Cir.2002).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                            Page 3
2004 WL 1879886 (D.Or.)
(Cite as: 2004 WL 1879886 (D.Or.))

Discussion

The plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence. *KVOS Inc. v. Assoc. Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936). When a jurisdictional question is "intimately involved with the substance of the patent laws" the law of the Federal Circuit, rather than that of the regional circuit, is applied to determine jurisdiction. *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1359 (Fed.Cir.2001); *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995).

Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether the assertion of personal jurisdiction would violate due process. *Inamed,* 249 F.3d at 1359. Oregon's long-arm statute is coextensive with the limits of due process, Or. R. Civ. P. 4L; therefore, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process. *Inamed* 249 F.3d at 1360.

The Federal Circuit applies a three-part test to make the due process determination: 1) whether the defendant has purposefully directed its activities at residents of the forum; 2) whether the claim arises out of or relates to the defendant's activities with the forum, and 3) whether assertion of personal jurisdiction is reasonable and fair. *Genetic Implant Systems, Inc. v. Core-Vent Corp.,* 123 F.3d 1455, 1458 (Fed.Cir.1997). The first two factors correspond to the "minimum contacts" analysis of *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The third factor corresponds to the "fair play and substantial justice" prong of *International Shoe. Id.*

There is no contention in this case that NGD has had "continuous and systematic" contacts with Oregon sufficient to subject it to general jurisdiction even though the cause of action has no relation to those contacts. Even if there were such a contention, $6,000 of sales of an unspecified number of items, taken with all the other evidence is insufficient for general jurisdiction. The issue, then, is whether the claim in this case arises out of, or relates to, activities by NGD that are purposefully directed to residents of Oregon. Specific jurisdiction exists when a non-resident defendant 1) purposefully establishes minimum contacts with the forum state, 2) the cause of action arises out of those contacts, and 3) jurisdiction is constitutionally reasonable. *3D Systems, Inc. v. Aarotech Laboratories, Inc.,* 160 F.3d 1373, 1378 (Fed.Cir.1998), citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) and *Akro,* 45 F.3d at 1545-46. Even a single contact with a forum state may suffice for personal jurisdiction "if it is directly and substantially related to the plaintiff's claim." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1359 (Fed.Cir.1998). With this standard in mind, I will analyze each of the defendant's contacts with Oregon.

A. The discussions with the Slocums about sale of assets.

*4 Slocum relies on *Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation,* 297 F.3d 1343 (Fed.Cir.2002), where the court held that jurisdiction lies where "defendant made telephone and mail contact with the forum in connection with seeking a license under plaintiff's patent application." Plaintiff's Memorandum, p. 8. However, *Deprenyl* is distinguishable.

First, whether the discussions at issue can be attributed to the defendant in this case, NGD, because they were between the Slocums and the principal of NGD, Khowaylo at a time when he may have been an organizer of the yet to be formed NGD cannot be resolved on this record. While Khowaylo is not the defendant in this case and NGD did not exist at the time of the discussions, nor did the accused product, there is not enough information about the organizational role played by Khowaylo, and when it took place to decide if the discussions can be attributed to NGD. Jurisdictional contacts must ordinarily result from actions *by the defendant itself* that create a substantial connection with the forum state. *Burger King,* 471 U.S. at 475 (emphasis added). On this record, negotiations

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 4
2004 WL 1879886 (D.Or.)
**(Cite as: 2004 WL 1879886 (D.Or.))**

between Khowaylo in his individual capacity and the Slocums cannot, therefore, support the imposition of jurisdiction over NGD, because it cannot be determined if Khowaylo's actions would be atributed to the defendant under the law.

Second, unlike the situation in *Deprenyl,* where a licensing agreement governing the patent at issue was negotiated, amended and ultimately executed, Khowaylo and the Slocums never even got to the point of discussing business terms, much less entering into an agreement. The Federal Circuit has held, in cases seeking a declaratory judgment of noninfringement and invalidity, that mere offers to license, or preliminary negotiations about licensing, a patent do not, without more, support personal jurisdiction. *See Inamed,* 249 F.3d at 1361 ("[W]arning letters from and negotiations for a license with an out-of-state patentee cannot, without more, support personal jurisdiction in an action for a declaratory judgment of patent invalidity and noninfringement."; *Red Wing,* 148 F.3d at 1359 (cease and desist letters from patent holder offering to license the patent at issue in the case did not amount to a purposeful effort to negotiate business with a Minnesota resident). *See also Burger King,* 471 U.S. at 479 (distinguishing between negotiations that come to fruition and create continuing obligations and those that do not). Therefore, even if Khowaylo's discussions are attributed to NGD, they are insufficient to support jurisdiction here.

Nor can it be said that the discussions between the Slocums and Khowaylo satisfy the "arise out of" requirement. The discussions occurred in 2001. The accused product did not exist at that time and was not available for sale until March 2004, approximately two and a half years later, and a month after commencement of this action.

B. The catalogs and the magazine advertisement

**\*5** Slocum asserts that NGD sent its catalog to "Oregon veterinarians" and points to Theresa Slocum's statement that, based on the records of the Oregon Veterinary Medical Association, there were 1,254 veterinary surgeons in Oregon in 2000. But Michael Khowaylo asserts that the NGD catalog, in which the accused product is one of 298 items, was sent to three customers in Oregon who had previously ordered other items from NGD's catalog. Moreover, at the time the catalog was sent out, the accused product was not for sale. He states that none of the three veterinarians to whom the catalog was sent requested information about or purchased the accused product.

Slocum relies primarily on *3D Systems.* In that case, the court upheld personal jurisdiction over Aaroflex, a company in Oklahoma that mailed promotional letters directed to particular individuals, solicited orders for models, sent videos and sample parts, and issued price quotations to residents of California. Aaroflex also responded to e-mail requests for information and discussed the use of a California company's software with its own equipment and purchased parts for its accused product in California. But the catalog and the magazine advertisement present significantly less in the way of both quantity and quality of solicitation.

The catalog went out to three veterinarians, all preexisting customers, and the accused product, one of 298 in the catalog, was merely given an identification number and a price. The catalog did not result in any sales of the accused product in Oregon.

The advertisement in *Veterinary Surgery* does refer to "Unity Cruciate Plates" in a list of products. However, Khowaylo states that the advertisement did not result in any sales within Oregon. Khowaylo states further that NGD's total sales in Oregon are less than $6,000, and that none of these sales was of the accused product.

The *3D* case, in contrast, involved "price quotations, brochures, specification sheets, videos and sample parts" sent to 26 potential customers in California, as well as solicitation letters and a sales representative who covered the state of California. 160 F.3d at 1376.

NGD argues for the application of *Hayden v. Shin-Etsu Handotai America, Inc.,* 80 F.Supp.2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5
2004 WL 1879886 (D.Or.)

**(Cite as: 2004 WL 1879886 (D.Or.))**

1119 (D.Or.1999), where the court found that two sales in Oregon were not enough to constitute purposeful availment. NGD asserts that the absence of *any* sales of the Unity Cruciate Plate in Oregon mean that its solicitation efforts in Oregon are too minimal to constitute purposeful availment. Moreover, NGD's counsel represented at argument that NGD had excluded Oregon from the scope of its sales, presumably as a result of this jurisdictional dispute.

The catalogs were sent to only three of Oregon's more than 1200 veterinarians. There is no indication that the magazine advertisement was purposefully directed at residents of Oregon, any more than residents of any other state, particularly in the absence of an Oregon distribution network, local sales force, or purely local advertising, factors often essential to a finding of personal jurisdiction on a "stream of commerce" theory. See *Hayden,* 80 F.Supp.2d at 1122.

**\*6** In *Burger King,* the Court emphasized that the purposeful availment requirement means that jurisdictional contacts must be significant and substantial rather than "random, fortuitous or attenuated." 471 U.S. at 475. The catalogs and the magazine advertisement do not constitute significant and substantial contacts.

C. The Internet site

The Internet site is somewhat more problematic. Use of the Internet creates difficult problems of personal jurisdiction because the Internet is not specifically targeted at people in any particular state or even country. *See, e.g., CIVIX-DDI LLC v. Microsoft Corp.,* 52 USPQ2d 1501, 1506 (D.Colo.1999) ( "The Internet may represent the latest and greatest challenge to questions of personal jurisdiction"). The cases considering the impact of websites on personal jurisdiction are determined on a "sliding scale," from interactive sites on which business is transacted, which generally do support the imposition of personal jurisdiction, to moderately interactive websites involving the exchange of information, which may or may not justify personal jurisdiction, depending on the level of interactivity and the commercial nature of the information exchanged, to "passive" sites where the defendant has simply posted information and made it available to Internet users; these usually do not support personal jurisdiction. *See CoolSavings.com Inc. v. IO.Commerce Corp.,* 53 F.Supp.2d 1000, 1002-03 n. 3 (N.D.Ill.1999) (describing the three categories).

In *3d Systems,* one of the defendants, Aarotech, took no direct actions toward residents of the forum state, but did maintain a website viewable in California. However, any e-mail responses to that site were forwarded to the other defendant, Aaroflex. The court, citing *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419-20 (9th Cir.1997), considered this an "essentially passive" website and held that personal jurisdiction over Aarotech in California was not proper.

In *Cybersell,* the Ninth Circuit was confronted with the issue of whether an allegedly infringing use of a service mark in a home page on the Internet sufficed for personal jurisdiction in the state where the holder of the mark had its principal place of business. The court applied the rationale that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet," 130 F.3d at 419, and held that the use of the mark on the Internet site did not support the exercise of personal jurisdiction because the defendant conducted no commercial activity over the Internet in Arizona. Rather, the defendant posted an "essentially passive home page on the Web using the name CyberSell." *Id.* The defendant did nothing to encourage people in Arizona to access the site, and there was no evidence that any part of its business was sought or achieved in Arizona. There was no evidence that any Arizonan other than the plaintiff ever "hit" the defendant's website. Further, the defendant entered into no contracts in Arizona, made no sales in Arizona, received no telephone calls from Arizona, earned no income from Arizona, and sent no messages over the Internet to Arizona. *Id.*

**\*7** In *Millennium Enterprises, Inc. v. Millennium*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1879886 (D.Or.)
(Cite as: 2004 WL 1879886 (D.Or.))

Page 6

*Music LP,* 33 F.Supp.2d 907 (D.Or.1999), a trademark infringement action, Judge Aiken of this court held that a retail music seller in South Carolina did not subject itself to personal jurisdiction in Oregon by maintaining an Internet site allowing users to purchase compact discs, join a discount club, and request franchising information. Plaintiff argued that this was an interactive, rather than a passive, site and therefore constituted sufficient contact with the forum to establish personal jurisdiction. Judge Aiken, in an exhaustive discussion of the law as it existed at that time, including *Cybersell,* noted that the trend was away from finding jurisdiction based solely on the existence of a website advertising products, and toward requiring "something more."

In *Bensusan Restaurant Corp. v. King,* 937 F.Supp. 295 (S.D.N.Y.1996), *aff'd,* 126 F.3d 25 (2d Cir.1997), the operator of a New York jazz club, Bensusan, sued the owner of a small Missouri jazz establishment, King, asserting that King infringed on Bensusan's right to the trademark, "The Blue Note." Bensusan alleged that jurisdiction over King was proper in New York because King maintained an Internet site that was accessible to New York residents. *Id.* at 299. The court disagreed: "The mere fact that a person can gain information on the allegedly infringing product is not the equivalent of a person advertising, promoting, selling or otherwise making an effort to target its product in New York." *Id.* The court also found that the assertion of jurisdiction failed to satisfy the third prong of the due process test, because King had not purposefully availed himself of the benefits of contacts with New York when he "simply created a Web site and permitted anyone who could find it to access it." *Id.* at 301. "Creating a site, like placing a product into the stream of commerce, may be felt nationwide--or even worldwide but without more, it is not an act purposefully directed toward the forum state." *Id.*

In *Multi-Tech Systems, Inc. v. Vocaltec Communications, Inc.,* 122 F.Supp.2d 1046, 1050-51, n. 6 (D.Minn.2000), the court held that a patentee could not assert personal jurisdiction based solely on the fact that the accused infringer operated an Internet website containing references to the accused product. In that case the accused infringer's activities with visitors to its interactive website fell "somewhere between the middle of the spectrum and the more active conducting business end of the spectrum of internet exchange." Although the accused infringer no longer offered the accused product for sale from its website, registered users could still download the programs and receive technical support-although previously, the accused infringer had offered the product for sale at its website.

In *VP Intellectual Properties, LLC v. IMTEC Corp.,* 53 USPQ2d 1269 (D.N.J.1999), the defendants described their web site as passive because visitors to the site could not order the accused product online. However, the court found the web site moderately interactive because it contained extensive product information and permitted visitors to fill out and submit a detailed, multi-page request form to obtain additional information on how to order the product. The website also contained an independent sales representative locator that included a box labeled "Missouri" on which Missouri residents could click for more information on how to purchase the product. The court concluded that the website constituted an "offer to sell" and imposed jurisdiction.

*8 In *CoolSavings.com,* 53 F.Supp.2d at 1002-03 n. 3, the court found specific personal jurisdiction in a patent infringement suit by a small company against a California company that had made the accused product available through an interactive web site to customers everywhere, including Northern Illinois, even though only a small number of Illinois residents had accessed the web site. The court held that "by setting up an interactive web site directed at the entire country, knowing and hoping that residents of all states would use it, and by using a Chicago-based marketing firm to promote its capabilities using the disputed technology, the accused infringer purposefully established minimum contacts with Illinois."

Alex Khowaylo asserts in his declaration that the NGD website does not advertise the accused

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1879886 (D.Or.)

(Cite as: 2004 WL 1879886 (D.Or.))

Page 7

product, does not contain a description, photograph or other depiction of the accused product, and is not set up to enable a customer to order the accused product over the internet. He further states that NGD has not received any orders over the internet for the accused product from Oregon or any other state, and has not received any phone orders from Oregon residents for the accused product. The website does, however, permit customers to order other specified products directly over the Internet and provides a telephone number which customers can use to order one of its products.

Under the cases discussed, I conclude that the NGD website is not sufficiently interactive to satisfy the purposeful availment requirement. Because the website does not describe or promote the accused product, or enable an Internet browser to purchase one, it also fails to satisfy the "arises out of" requirement.

D. Khowaylo's presence at professional association meetings and trade shows

Theresa Slocum does not state that she has ever seen Khowaylo at a meeting or trade show in Oregon; his presence at gatherings in other parts of the United States is irrelevant to the issue presented here.

Conclusion
The evidence proffered by Slocum is not sufficient to create a prima facie showing of minimum contacts sufficient to support specific jurisdiction. I therefore recommend that the motion to dismiss be granted.

Scheduling Order
The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due September 3, 2004. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due September 17, 2004, and the review of the Findings and Recommendation will go under advisement on that date.

2004 WL 1879886 (D.Or.)

**Motions, Pleadings and Filings (Back to top)**

- 3:0400201 (Docket) (Feb. 12, 2004)

- 3:04CV00201 (Docket) (Feb. 12, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.