**Westlaw.**

Slip Copy

Page 1

2004 WL 2346137 (D.Del.)

**(Cite as: 2004 WL 2346137 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
ESPEED, INC.; Cantor Fitzgerald, L.P.; CFPH, L.L.C., and eSpeed Governme Securities, Inc., Plaintiffs,
v.
BROKERTEC USA, L.L.C.; BrokerTec Global, L.L.C.; Garban, LLC; ICAP PLC; OM AB; and OM Technology (U.S.), Inc., Defendants.
No. Civ.A. 03-612-KAJ.

Sept. 13, 2004.

Jack B. Blumenfeld, and Julia Heaney, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for plaintiffs.

Gary A. Rosen, Law Offices of Gary A. Rosen, P.C., Philadelphia, Pennsylvania, David J. Wolfsohn, Alan C. Promer, and Michele D. Hangley, Hangley Aronchick Segal & Pudlin, Philadelphia, Pennsylvania, of counsel.

Richard L. Horwitz, and David E. Moore, Potter Anderson & Corroon LLP, Wilmington, Delaware, for defendants.

James W. Dabney, Peter L. Simmons, and Henry C. Lebowitz, Fried, Frank, Harris, Shriver & Jacobson LLP, New York, New York, of counsel.

MEMORANDUM OPINION

JORDAN, J.

I. INTRODUCTION

*1 This is a **patent infringement** case. Jurisdiction is proper under 28 U.S.C. § 1338. The plaintiffs filed their Complaint on June 30, 2004, naming BrokerTec USA L.L.C. ("BrokerTec"), BrokerTec Global, L.L.C., Garban, L.L.C. ("Garban"), OM Technology (U.S.), Inc., OM AB, and ICAP Plc ("ICAP") as defendants. (Docket Item ["D.I."] 1 .) Presently before me is ICAP's Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (D.I. 161; the "Motion".) For the reasons that follow, ICAP's Motion will be granted.

II. BACKGROUND

A. *The Parties*

The plaintiffs are all corporate entities recognized under the laws of the State of Delaware and have their principal places of business in New York, New York. (D.I. 1, ¶¶ 2-4; *see also* D.I. 512.) Defendants BrokerTec, BrokerTec Global, L.L.C., and Garban are all limited liability companies organized under Delaware law and have their principal places of business in Jersey City, New Jersey. (*Id.,* ¶¶ 5-7.) ICAP is a corporation organized and existing under the laws of the United Kingdom and has a principal place of business in the United States in Jersey City, New Jersey. (*Id.,* ¶ 8.)

B. *Factual Background*

Shortly after ICAP filed its Motion, the parties stipulated to and engaged in jurisdictional discovery. (*See* D.I. 185.) Because the plaintiffs have the burden of proving that it is proper for me to exercise personal jurisdiction over ICAP in this District, *see Provident Nat'l Bank v. California Savings & Loan Assoc.,* 819 F.2d 434, 437 (3d Cir.1987), the following is taken largely from the plaintiffs' recitation of the facts (*see* D.I. 271 at 3-10), unless noted otherwise.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                           Page 2
2004 WL 2346137 (D.Del.)
(Cite as: 2004 WL 2346137 (D.Del.))

The plaintiffs allege that all of the defendants are willfully and intentionally **infringing** U.S. **Patent** No. 6,560,580 B1 (issued May 6, 2003), which is entitled "Automated Auction Protocol Processor". (See D.I. 1, Ex. A.) ICAP, one of the six named defendants, is a public limited company incorporated in England and listed on the London Stock Exchange. (D.I. 162 at 2; D.I. 271 at 3.) [FN1] ICAP claims that it is not registered to conduct business in Delaware and that it has no registered agent for service of process in Delaware or any other state within the United States. (Id.) ICAP also asserts that it does not transact business, perform any work or services, or engage in any persistent course of conduct in Delaware. (Id.) ICAP characterizes itself as a "holding company" that is the "ultimate parent of a group of companies whose principal business is that of a worldwide voice and electronic interdealer broker of a variety of financial instruments in the wholesale markets." (D.I. 162 at 2.)

> FN1. In support of its factual assertions pertaining to jurisdiction, ICAP cites the Declaration of Helen Broomfield, the Company Secretary of ICAP (attached to D.I. 162 as Ex. 1).

In its 2003 Annual Report, ICAP described itself as the "world's largest voice and electronic interdealer broker" with "more than 2,800 staff, operating from 21 offices worldwide." (D.I. 271 at 3-4 .) Further, ICAP defines itself as the parent company of an array of entities that are members of the "ICAP Group" (hereinafter the "ICAP Group" or the "Group"). (Id. at 4.) ICAP owns 100% of the twelve American subsidiaries that are a part of the Group. [FN2] (Id. at 4.) The Group is managed, as a whole, by the ICAP Board of Directors (the "Board"). (Id.) The Board approves the ICAP Group's budget and makes regular internal audit visits to the Group's operating companies in the United States. (Id. at 5, 9.) ICAP earns about 35 percent of its profits from its operations in the United States. (Id. at 9.)

> FN2. BrokerTec and Garban are two of ICAP's subsidiaries. (D.I. 271 at 6.) Furthermore, the following members of the ICAP Group have filed certificates of amendment or correction in Delaware between 1999 and 2003: First Brokers Securities LLC, Garban Capital Markets LLC, Garban Corporates LLC, Garban Futures LLC, Garban Information Systems (Americas) LLC, Garban Securities LLC, Garban LLC, ICAP Services North America LLC, Wembley Asset Management LLC, and Wrightson ICAP LLC. (Id. at 8 (citing D.I. 275, Ex. 30).)

*2 ICAP, together with its BrokerTec [FN3] and Garban subsidiaries, maintains two websites, namely, www.icap.com and www.brokertec .com. (Id. at 6.) These websites allow users to access and use the ICAP Group's accused electronic trading platforms [FN4] from anywhere in the world. (Id.)

> FN3. ICAP acquired BrokerTec, a Delaware company, on May 7, 2003. (Id. at 7.)

> FN4. BrokerTec's Electronic Trading Network ("ETN") and Garban's Electronic Trading Community ("ETC"). (D.I. 271 at 6.)

III. STANDARD OF REVIEW

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court,
> before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Intern. Ltd. v. Rudolph Wolff & Co.,* 484 U.S. 97, 104 (1987). This principle is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2346137 (D.Del.)
(Cite as: 2004 WL 2346137 (D.Del.))

Page 3

Rule 4(e)(1) of the Federal Rules of Civil Procedure states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause. [FN5] *La Nuova D & B S.p.A. v. Bowe Co. Inc.*, 513 A .2d 764, 768 (Del.1986). I must nevertheless determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process. *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F.Supp.2d 690, 694 (D.Del.1998); see generally, *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).

> FN5. According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed.Cir.1995). The Federal Circuit has instructed that, "in interpreting the meaning of state long-arm statutes, we defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed.Cir.1998). The Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

As noted previously, once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred between the forum state and defendant to support jurisdiction. [FN6] *Provident Nat'l Bank*, 819 F.2d at 437; see also *Ace & Co., Inc. v. Balfour Beatty PLC*, 148 F.Supp.2d 418, 422 (D.Del.2001) (plaintiff must present facts that "establish with reasonable particularity" that the defendant is subject to personal jurisdiction). The plaintiff may demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities with the forum state. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.*, 1999 WL 615175 (D.Del. Aug. 3, 1999). General jurisdiction does not require that the defendant's contacts be related to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state. *Id.*

> FN6. In this case, the parties agreed to conduct jurisdictional discovery shortly after ICAP filed its Motion (*see supra* at p. 2). The plaintiffs have filed a Contingent Cross Motion to Compel Discovery on the Issue of Personal Jurisdiction (D.I.272) asking me to order ICAP to more fully respond to certain of the plaintiffs' jurisdictional discovery requests. The parties had an ample opportunity to conduct jurisdictional discovery, and the plaintiffs have not persuaded me that ICAP improperly obstructed the course of that discovery. Furthermore, as discussed more fully *infra* at n. 7, the discovery that the plaintiffs seek to compel is immaterial to the disposition of ICAP's Motion. Therefore, I will decide ICAP's Motion on the basis of the record currently before me, and the plaintiffs' Motion to Compel (D.I.272) will be denied.

*3 The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent:
(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if the person regularly does or solicits business, engages in any other persistent course

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2346137 (D.Del.)
(Cite as: 2004 WL 2346137 (D.Del.))

Page 4

of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;
(5) Has an interest in, uses or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.
10 Del. C. § 3104(c). The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del.Super.1997).

IV. DISCUSSION

ICAP asserts that it is not subject to jurisdiction in Delaware under any section of the Delaware long-arm statute. (D.I. 162 at 4-5 .) The plaintiffs say that ICAP is subject to specific jurisdiction, under 10 Del C. § 3104(c)(1), on the basis of its website activities and its subsidiaries' actions in Delaware. (D.I. 271 at 11-16, 20.) The plaintiffs also argue that ICAP is subject to general jurisdiction under 10 Del. C. § 3104(c)(4) because it has "made continuous and systematic filings in Delaware relating to the formation, operation and cancellation" of its subsidiaries in Delaware (*see supra* at n. 2). (*Id.* at 19.)

First, I am unpersuaded that it is appropriate to exercise specific jurisdiction over ICAP in Delaware on the basis of its **website** activity alone. "[W]here the defendant is clearly doing business through its **website** in the forum state, and where the claim relates to or arises out of use of the **website**," it is proper to exercise specific jurisdiction over a defendant. *See Toys 'R' Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 452-54 (3d Cir.2003) (specific jurisdiction exists if "the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its **website** to the state, knowingly interacting with residents of the forum state via its **website,** or

through sufficient other related contacts."). In this case, the plaintiffs have come forward with evidence showing that ICAP's **websites** are accessible to computer users anywhere in the world. Mere accessibility of a **website,** though, is not a matter of much moment. It is interactivity and the conducting of business over the **Internet** that carries jurisdictional consequences. *Toys 'R' Us,* 318 F.3d at 452 (exercise of **personal jurisdiction** proper where commercial **website's** interactivity reflected specifically intended interaction with residents of the forum state) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997)). There is no evidence here that ICAP has any customers in Delaware, let alone customers who accessed ICAP's **websites,** downloaded the BrokerTec ETN or the Garban ETC, and then conducted trades from Delaware. [FN7] (*See* D.I. 271 at 20, 23.) Not only have the plaintiffs failed to show that ICAP specifically intended to interact with Delaware residents through its **website,** they have failed to show that there were any ICAP customers in Delaware who were actually capable of conducting electronic trading via ICAP's **websites.** Therefore, the plaintiffs have failed to prove that ICAP purposefully availed itself of conducting activity in Delaware by directly targeting its **websites** to Delaware or knowingly interacting with residents of Delaware through its **websites,** *see Toys 'R' Us,* 318 F.3d at 453, and I decline to exercise **personal jurisdiction** over ICAP on the basis of its **website** alone.

> FN7. For that matter, there is no evidence that people in Delaware accessed ICAP's websites at all, *i.e.,* while surfing the Internet. I am aware of the plaintiffs' request to compel further discovery from ICAP pertaining to the "ICAP Website Report" compiled by a company called Webtrends (*see* D.I. 273 at 7); however, that information is immaterial, since the plaintiffs haven't even shown, in the first instance, that ICAP has customers in Delaware who are able to actually conduct business through any ICAP websites. For this reason, and for the reasons stated *supra* at n. 6, the plaintiffs' request to compel

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 5
2004 WL 2346137 (D.Del.)
(Cite as: 2004 WL 2346137 (D.Del.))

further discovery pertaining to Webtrends will be denied.

*4 I am also unpersuaded by the plaintiffs' second argument that the actions of ICAP's subsidiaries may be attributed to ICAP for the purpose of establishing specific jurisdiction. (*Id.* at 16.) As ICAP points out, "under the agency theory only precise conduct known to be instigated by the parent is attributed to the parent" for jurisdictional purposes. (D.I. 296 at 4-5 (citing *C.R. Bard v. Guidant Corp.*, 997 F.Supp. 556, 558-59 (D.Del.1998)).) The record shows that ICAP owns twelve American subsidiaries that are a part of the ICAP Group, and that ICAP's Board manages the ICAP Group as a whole. However, there is no evidence that ICAP's Board exerted some particular control over BrokerTec, Garban, or other American subsidiaries, such that the conduct of those subsidiaries in Delaware would be attributed to ICAP. [FN8] Thus, the plaintiffs have failed to meet their burden of proving with reasonable particularity that exercising specific jurisdiction over ICAP is appropriate in this case.

> FN8. To the extent that the plaintiffs are attempting to assert jurisdiction over ICAP under an alter ego theory, that theory is applicable only when "the party asserting jurisdiction [has established] some fraud, injustice, or inequity in the use of the corporate form." *Ace & Co., Inc. v. Balfour Beatty PLC,* 148 F.Supp.2d 418, 425 (D.Del.2001) (quoting *C.R. Bard,* 997 F.Supp. at 559). The plaintiffs have not come forward with any evidence to establish those things in this case.

In order for me to exercise general jurisdiction over ICAP, the plaintiffs must prove that ICAP has continuous or systematic contacts with Delaware. *American Bio Medica Corp.,* 1999 WL 615175 at *2. The plaintiffs say that ICAP "regularly transacts business within Delaware through the repeated formation, purchase, and operation of business entities" in Delaware. (D.I. 271 at 7.) The plaintiffs also argue that the ICAP Group has "merged and amended the articles and certificates for Delaware companies on numerous occasions." (*Id.* at 7-8.)

I am unpersuaded by the plaintiffs' argument that, because ICAP bought BrokerTec and the ICAP Group filed amended certificates for certain subsidiaries in Delaware, ICAP has continuous or systematic contacts with Delaware. First, when ICAP bought BrokerTec, BrokerTec was already an established Delaware corporation. ICAP did not take any steps to form or incorporate BrokerTec in Delaware. Second, there is no evidence on the record before me that ICAP, through its Board or otherwise, has done anything to disregard the separate corporate status and management that its subsidiaries have. There is evidence on the record that members of the Board occasionally travel to the United States on business; however, there is no evidence that they travel to Delaware. Furthermore, the fact that certain subsidiaries filed certificates of amendment in Delaware does not mean that ICAP filed those certificates, or even knew that they were being filed. The plaintiffs have not set forth any reason why the activities, in Delaware, of ICAP's subsidiaries should be imputed to ICAP itself. Because I find that the plaintiffs have not demonstrated with reasonably particularity that ICAP has continuous or systematic contacts with Delaware, I will not exercise general jurisdiction over ICAP.

Finally, the plaintiffs ask that I exercise jurisdiction over ICAP pursuant to Federal Rule of Civil Procedure 4(k)(2), on the basis that ICAP has sufficient minimum contacts with the United States as a whole. (D.I. 271 at 29.) Personal jurisdiction pursuant to Rule 4(k)(2) may be exercised if (1) ultimately, the plaintiff's claim arises under federal law, (2) the defendant is beyond the jurisdictional reach of any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction over the defendant does not offend the Constitution or other federal law. *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,* 229 F.3d 254, 258 (3d Cir.2000).

*5 In this case, the plaintiffs' **patent infringement** claims arise under federal law. However, ICAP asserts that it would properly be subject to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2346137 (D.Del.)
**(Cite as: 2004 WL 2346137 (D.Del.))**

Page 6

jurisdiction in New Jersey, because that is where BrokerTec and Garban are headquartered. (D.I. 296 at 20.) Because ICAP is admittedly within the jurisdictional reach of New Jersey, I decline to exercise jurisdiction over ICAP under Rule 4(k)(2). *See ISI Int'l, Inc. v. Borden Ladner Gervias LLP,* 258 F.3d 548, 552 (7th Cir.2001) ("A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed.")

V. CONCLUSION

For these reasons, ICAP's Motion (D.I.161) will be granted and the plaintiffs' Contingent Cross Motion to Compel Discovery (D.I.272) will be denied. An appropriate order will follow.

*ORDER*

For the reasons set forth in the Memorandum Opinion issued today, it is hereby ORDERED that defendant ICAP Plc's Motion to Dismiss for Lack of Personal Jurisdiction (D.I.161) is GRANTED and the plaintiffs' Contingent Cross Motion to Compel Discovery (D.I.272) is DENIED.

2004 WL 2346137 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

- 1:03CV00612 (Docket)
(Jun. 30, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.