Westlaw.

Not Reported in A.2d                                                                                                    Page 1
1999 WL 288119 (Del.Ch.)
(Cite as: 1999 WL 288119 (Del.Ch.))

C
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
COMPUTER PEOPLE, INC. Plaintiff,
v.
BEST INTERNATIONAL GROUP, INC., a Delaware corporation, Best International Group PLC, a foreign corporation, Best People Limited, a foreign corporation, and Raymond Arello, an individual, Defendants.
No. CIV. A. 16648.

April 27, 1999.

David C. Weiss and Richard S. Cobb, Esquires, of Duane, Morris & Heckscher LLP, Wilmington, Delaware; and Michael N. Sheetz and Peter M. Coppinger, Esquires, of Gadsby & Hannah LLP, Boston, Massachusetts, Attorneys for Plaintiff.

Robert J. Stearn Jr., Esquire, of Richards, Layton & Finger, Wilmington, Delaware; and John M. Murphy and Anthony G. Stamato, Esquires, of Baker & McKenzie, Chicago, Illinois, Attorneys for the Best Defendants.

R. Judson Scaggs, Jr. and William M. Lafferty, Esquires, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware; and Bruce L. Atkins and Christine M. Stevenson, Esquires, of Contant, Scherby & Atkins, Hackensack, New Jersey, Attorneys for Defendant Raymond Arello.

MEMORANDUM OPINION

JACOBS, Vice Chancellor.

*1 In this action, the plaintiff, Computer People, Inc. ("Computer People" or "the company"), claims that the defendants have engaged in a conspiracy to induce several of the company's managers and other high level employees to leave Computer People and join forces with the defendants. The named defendants are Best International Group PLC ("Best PLC") and Best People Limited ("Best Ltd."), both United Kingdom corporations; Best International Group, Inc., a Delaware corporation ("Best USA"); and Raymond Arello ("Arello"), a New Jersey resident.

The defendants other than Best USA have moved to dismiss the complaint as to them under Court of Chancery Rule 12(b)(2) for lack of personal jurisdiction. Additionally, all defendants have moved to dismiss the action under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

For the following reasons, the Court determines that it lacks personal jurisdiction over defendants Arello, Best PLC, and Best Ltd ., and grants the motion to dismiss the complaint as to those defendants. The result is to leave Best USA as the sole remaining defendant. Because neither side has adequately briefed the 12(b)(6) motion with that contingency in mind, the Court denies the Rule 12(b)(6) motion, with leave to renew based on briefs that take into account the procedural consequences of the jurisdictional ruling made here.

I. BACKGROUND
The facts set forth below are derived from the complaint and the affidavits filed in connection with these motions.

A. The Parties

1. Computer People

Computer People, a Delaware corporation, is a subsidiary of Delphi PLC, a British corporation with branch offices throughout the United

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B00558...    4/12/2005

Not Reported in A.2d

1999 WL 288119 (Del.Ch.)

(Cite as: 1999 WL 288119 (Del.Ch.))

Page 2

Kingdom. Computer People provides specialized employment staffing services on a contract basis within the information technology ("IT") industry. The company has 14 branch offices nationwide grouped into three regions. [FN1] Its business is to hire IT professionals ("consultants") and then place those consultants with commercial and governmental entities. In those environments, the consultants perform tasks that include programming, system administration, applications development, system analysis and design, and network administration and installation.

> FN1. The Western region, which has its headquarters in Los Angeles, includes branch offices in Seattle, Portland, Dallas, and Houston. The Midwest region, which is headquartered in King of Prussia, Pennsylvania, includes branch offices in Chicago, Detroit, Columbus, and Atlanta. The Mid-Atlantic region, which has its headquarters in Wilmington, Delaware, includes branch offices in New York City and King of Prussia, Pennsylvania.

Each Computer People branch office has a manager who is responsible for operating that office, and who has access to highly confidential and sensitive information, including a database containing detailed information about Computer People's consultants and clients. Because of the sensitive and confidential nature of this information, all managers are required to sign employment agreements that contain various restrictive covenants covering topics such as employee non-solicitation, customer non-solicitation, and confidentiality. Some Computer People employees are also required to include non-competition provisions in their employment agreements.

2. The Defendants

Best PLC, a British corporation, is the corporate parent of several IT placement subsidiaries throughout the world, including defendants Best USA and Best Ltd. Defendants Best PLC and Best Ltd. do not own any real estate, maintain any office, or conduct any business; and neither company is registered to do business in Delaware. Best PLC and Best Ltd. also have no Delaware mailing address, post office box, telephone number or listing; nor do they generate any substantial revenue from Delaware operations or have a designated agent for service of process in Delaware.

*2 Best PLC incorporated Best USA in Delaware on August 12, 1998 to take advantage of the administrative convenience and corporate tax considerations associated with being a Delaware corporation. Best USA, like Computer People, is in the business of placing consultants in the IT field on a contractual basis. Best USA's principal place of business is in Freehold, New Jersey, and it also maintains three branch offices outside New Jersey, none of which are located in Delaware. [FN2]

> FN2. The branches are located in Los Angeles, California; Dallas, Texas; and Seattle, Washington.

Raymond Arello worked for Computer People from May 22, 1989 through May 15, 1998. Originally hired as the New York branch manager, Arello served as Vice President and Regional Manager for Computer People's Northeast region from January 1, 1993 through March 1, 1998. On March 1, 1998, Arello was promoted to Senior Vice President for Computer People and Alpine Computer System (a separate operating division located in New York), [FN3] with oversight responsibility for profit improvement in New York and New Jersey.

> FN3. Alpine is involved in remote systems management, outsourcing, computer network design, and consulting services.

Although he was a New Jersey resident, Arello initially had many Delaware contacts as a Computer People employee. As a regional Vice President from 1993 to 1996, Arello was responsible for supervising Computer People's Delaware branch office; and in that role he had frequent contacts in Delaware with Michael Stanley, Computer People's Wilmington branch office manager. Arello visited the Delaware branch office weekly and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

1999 WL 288119 (Del.Ch.)

(Cite as: 1999 WL 288119 (Del.Ch.))

Page 3

communicated with that office almost daily by telephone and e-mail. He also frequently attended sales and staff meetings in Delaware and was available to answer operational and other questions for Stanley as needed. Arello never lived in Delaware, however, and after 1996 his Delaware contacts declined significantly.

In April 1998, Best Ltd. executives Susan E. Cuff ("Cuff") and Michael R. Bayfield ("Bayfield") contacted Arello and offered him a position with Best USA. In May 1998, Arello left Computer People after being terminated as part of the company's cost-reduction plan. Thereafter, Arello became Best USA's President and Chief Executive Officer, and presently works out of Best USA's Freehold, New Jersey headquarters. After he left Computer People, Arello's only Delaware contact occurred in 1998, when he had lunch with Stanley in Delaware and toured Computer People's new Wilmington, Delaware facility.

B. The Defendants' Alleged Solicitation of Computer People Employees

Computer People claims that the defendants have conspired to lure away five key Computer People employees (including 4 of its 14 branch managers) who had access to sensitive and confidential company information. These defecting employees included former branch managers Thomas P. Meola ("Meola"), William Kalinowski ("Kalinowski"), Jon Raymond ("Raymond"), and Brian Mitchell ("Mitchell"), and former employee Chelsey D. English ("English"). What follows is a brief summary of the alleged wrongful acts committed by the defendants. None of those acts occurred in Delaware.

1. Meola

*3 From December 16, 1994 until he resigned on September 8, 1998, Meola was Computer People's New York branch manager. During the summer of 1998, Meola met twice with Bayfield, and he also met with Cuff on an unspecified number of occasions. According to the complaint, at these meetings Bayfield allegedly promised Meola that he would be the "number two" person in charge of Best USA, and he offered Meola a one-year guaranteed employment contract that promised yearly compensation of approximately $350,000.

On August 27, 1998, Meola gave Computer People notice of his resignation effective September 25, 1998. Over the Labor Day weekend, Arello, who had remained friends with Meola since he left Computer People, [FN4] contacted Meola and persuaded him to accept employment with Best USA, where Meola is now currently employed.

> FN4. Arello and Meola were colleagues working in the same region while both were employed at Computer People. Arello hired and managed Meola in the New York branch office for two years.

2. Kalinowski

From January 1, 1989 until September 30, 1993, Kalinowski was Computer People's Los Angeles branch manager; and from October 1, 1993, to September 30, 1997, he was its Atlanta branch manager. Kalinowski again served as Computer People's Los Angeles branch manager from October 1, 1997, until he resigned on September 4, 1998.

In July or August 1998, Bayfield and Cuff, acting on behalf of Best Ltd. and/or Best PLC, solicited Kalinowski to leave Computer People and join Best USA. On August 6, 1998, Kalinowski tendered his resignation and gave Computer People one month's notice. Kalinowski now works for Best USA in its Los Angeles branch office.

3. Raymond

From July 7, 1997, until February 2, 1998, Raymond was an account manager in Computer People's Seattle office. On February 2, 1998, Raymond became the Seattle branch office manager, where he remained until his resignation on May 26, 1998. Shortly thereafter, Bayfield and Cuff, acting on behalf of Best Ltd. and/or Best PLC, offered Raymond a position with Best USA. Raymond is now Best USA's Seattle office branch

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

1999 WL 288119 (Del.Ch.)

(Cite as: 1999 WL 288119 (Del.Ch.))

Page 4

manager.

4. Mitchell

From July 1, 1987 until he resigned on July 28, 1998, Mitchell was employed by Computer People, first as a contract sales executive in its New York office, then as its Wilmington, Delaware branch manager, and finally as its Dallas, Texas branch manager. By letter dated June 29, 1998, Mitchell tendered his resignation, effective July 28, 1998. Sometime during the summer of 1998, the defendants, including Bayfield and Cuff acting on behalf of Best Ltd. and/or Best PLC, contacted Mitchell in an effort to recruit him for Best USA. It is unclear from the complaint whether this contact occurred during or after Mitchell's employment with Computer People; but in any event, Mitchell now works for Best USA as its Dallas branch manager.

5. English

On July 27, 1998, English resigned from Computer People's Dallas office, effective August 14, 1998. At some point, Mitchell allegedly contacted English to recruit her on behalf of Best USA for the Dallas office. It is unclear from the complaint whether this contact occurred before or after English terminated her employment with Computer People. In any event, English now works for Mitchell in Best USA's Dallas office.

C. Other Alleged Solicitation Efforts

*4 The plaintiff also alleges that beginning in January or February 1998, Bayfield and Cuff (on behalf of Best Ltd. and Best PLC) began to solicit Computer People's Mid-Atlantic branch manager, Michael Stanley, who is based in Wilmington, Delaware. That is the only solicitation activity claimed to have occurred in Delaware. There were two other alleged telephone call solicitations by Bayfield from outside Delaware to Stanley's Delaware office, during which Bayfield allegedly informed Stanley that Best was "coming to the United States" and invited Stanley to join them. On May 21, Bayfield and Cuff met with Stanley at the Philadelphia Airport and again solicited him to join

Best's "United States team." One month later, in June or July 1998, Stanley had a follow up meeting with Bayfield and Cuff in New York, and also received an e-mail from Bayfield at his Wilmington office. Ultimately, however, Stanley resisted these blandishments and decided to stay with Computer People.

In April 1998, Best Ltd. executives Cuff and Bayfield contacted Geoffrey Richardson, who at that time was Computer People's Senior Vice President of Recruiting and the Director of its National Resourcing Office. Cuff and Bayfield offered Richardson a position with Best USA. The complaint does not allege that Richardson presently works for the defendants or that he intends to work for the defendants in the future.

II. THE CONTENTIONS

Computer People's complaint has six counts. Count One alleges that the defendants tortiously interfered with Computer People's contractual relationship with its employees through its various solicitations. Computer People contends that its former employees cannot perform similar services for Best USA without violating the express terms of their Computer People employment agreements, because those employees, once employed by Best USA, will inevitably: (i) solicit and/or disclose the names of the customers and consultants that are a part of Computer People's database and/or workforce; and (ii) use and disclose other confidential Computer People information in the course of performing their managerial duties.

Count Two alleges that the defendants have tortiously interfered with Computer People's business relations by intentionally recruiting Computer People's key managerial employees. This depletion of its upper-level employees, Computer People claims, has caused or will cause the termination of Computer People's present or prospective business relations with its clients.

Count Three alleges that Arello's solicitation of Computer People's employees (in particular Meola) violated his employment agreement with Computer People. Count Four contends that that same conduct

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                    Page 5
1999 WL 288119 (Del.Ch.)
**(Cite as: 1999 WL 288119 (Del.Ch.))**

breached Arello's common law fiduciary duty owed by him to Computer People. Count Five alleges that Best Ltd. and Best PLC, through Bayfield and Cuff, knowingly participated and assisted in Arello's breach of fiduciary duty to Computer People.

The final count, Count Six, alleges that the defendants are parties to a conspiracy to create and operate Best USA as the vehicle for defendants' efforts to interfere tortiously with Computer People's contractual and business relationships.

*5 Defendants Arello, Best PLC, and Best Ltd., have moved to dismiss this action under Court of Chancery Rule 12(b)(2) for lack of jurisdiction over the person. (The defendants concede that the Court has personal jurisdiction over Best USA, which is a Delaware corporation.). In addition, all four defendants have moved to dismiss the complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Only the first of these motions is addressed, for the reasons discussed later herein.

### III. ANALYSIS
A. Applicable Legal Standards

To overcome a challenge to personal jurisdiction under Court of Chancery Rule 12(b)(2), a plaintiff must establish, *prima facie,* that this Court has personal jurisdiction over the moving defendant. [FN5] In that context all factual inferences are viewed in the light most favorable to the plaintiff. [FN6] Where, as here, the plaintiff attempts to effect service of process under the Delaware Long Arm Statute, 10 *Del. C.* § 3104, the plaintiff must prove that (i) the defendants' alleged conduct falls within one or more of the statutorily enumerated categories that confer jurisdiction and that (ii) the Court's exercise of personal jurisdiction satisfies the due process requirements of the Fourteenth Amendment of the United States Constitution. [FN7]

> FN5. *Newspan, Inc. v. Hearthstone Funding Corp.,* Del. Ch., C.A. No. 13304, mem. op. at 8, Allen, C. (May 10, 1994). The plaintiff bears the burden of showing by evidence that the fact finder could determine that the factual predicate for jurisdiction has been proven. *Id.* at 2 (citing *Hart Holding Co. v. Drexel Burnham Lambert, Inc.,* Del. Ch., 593 A.2d 535, 539 (1991)).

> FN6. *See Outokumpu Eng. Entrs., Inc. v. Kvaerner Enviropower, Inc.,* Del.Super., 685 A.2d 724, 727 (1996).

> FN7. *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.,* Del.Supr., 611 A.2d 476, 480 (1992), *cert. dismissed,* 507 U.S. 1025 (1993).

The pertinent provisions of Delaware's Long Arm Statute, 10 *Del. C.* § 3104(c), state:
(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
(1) Transacts any business or performs any character of work or service in the State;

* * *

(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

Subsections (c)(1) and (c)(3) authorize "transactional" or "specific" jurisdiction in cases where the cause of action arises out of the defendant's conduct in the State of Delaware. [FN8] Under those subsections a single act in Delaware will suffice. Subsection (c)(4), on the other hand, creates "general" jurisdiction in cases where the cause of action is unrelated to the relevant Delaware contacts. [FN9] General jurisdiction under subsection (c)(4) requires a greater, more

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 6

1999 WL 288119 (Del.Ch.)

**(Cite as: 1999 WL 288119 (Del.Ch.))**

continuous pattern of contacts with the forum than does "single act" jurisdiction under subsection (c)(1), (2), or (3). The "tradeoff" for this stricter requirement is that the activities which create that general presence need not be the basis for the plaintiff's cause of action.

> FN8. *Sears. Roebuck & Co. v. Sears PLC,* D. Del., 744 F.Supp. 1289, 1292 (1990).
>
> FN9. *Id.*

In narrowly defined circumstances, personal jurisdiction may also be established under a common law "conspiracy theory." The conspiracy theory of jurisdiction is not, strictly speaking, an independent jurisdictional basis, but rather, is a shorthand reference to an analytical framework where a defendant's conduct that either occurred or had a substantial effect in Delaware is attributed to a defendant who would not otherwise be amenable to jurisdiction in Delaware. [FN10]

> FN10. *Newspan, supra* note 5, at 19-20 (citing *Hercules Inc. v. Leu Trust & Banking,* Del.Supr., 611 A.2d 476, 482 n. 6 (1992)).

B. The Jurisdictional Motion

*6 In opposition to the defendants Rule 12(b)(2) motion, Computer People has identified three categories of "Delaware contacts" that, it claims, support personal jurisdiction over the defendants. These contacts are: (i) Arello's continuing presence in Delaware as a Computer People employee from 1993 to 1996; (ii) two telephone calls and one e-mail made by Bayfield and Cuff to Stanley at his Delaware office; and (iii) the incorporation of Best USA in Delaware. These three sets of contacts, Computer People argues, are sufficient to establish personal jurisdiction (a) over Arello under 10 *Del. C.* § 3104(c)(1), (c)(3), (c)(4), and under the conspiracy theory; and (b) over Best PLC and Best Ltd. under 10 *Del. C.* § 3104(c)(1) and the conspiracy theory. I disagree, and conclude that the plaintiff has failed to establish that this Court has personal jurisdiction over any of these defendants.

[FN11]

> FN11. That finding makes it unnecessary to reach the due process component of the jurisdictional analysis.

1. The Conspiracy Theory

Computer People first attempts to support jurisdiction over Best Ltd., Best PLC, and Arello on the basis that Best USA was incorporated in Delaware and then was operated as part of a conspiracy among the non-Delaware defendants to interfere tortiously with Computer People's contractual and business relationships with employees, consultants, and customers. This alleged conspiracy forms the linchpin of Computer People's jurisdictional argument.

Under the "conspiracy theory" of jurisdiction, a plaintiff may establish personal jurisdiction over a nonresident only if it satisfies five elements, namely, by showing that:

(1) a conspiracy...existed; (2) the defendant was a member of the conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy. [FN12]

> FN12. *Instituto Bancario Italiano SpA v. Hunter Eng'g Co.,* Del.Supr., 449 A.2d 210, 225 (1982); *Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc.,* Del. Ch., C.A. No. 13950, mem. op. at 29, Allen, C. (Nov. 21, 1995) (the "proper invocation of this basis of jurisdiction requires factual proof of each enumerated element."), *appeal refused,* Del.Supr., 676 A.2d 908 (Jan. 22, 1996); *Newspan, supra* note 5, at 18-19 ("all [five elements] must be satisfied before a Delaware court may exercise personal jurisdiction").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 7

1999 WL 288119 (Del.Ch.)

**(Cite as: 1999 WL 288119 (Del.Ch.))**

The test ultimately "turns on the imputation to the [alleged] conspirator of meaningful activity on behalf of the conspiracy *which occurred and caused effects in Delaware.*" [FN13]

> FN13. *HMG/Courtland Properties, Inc. v. Gray,* Del. Ch., C.A. No. 15789, mem. op. at 15-16, Strine, V.C. (Jan. 13, 1999) (emphasis added).

The conspiracy theory of jurisdiction is narrowly and strictly construed; otherwise, that theory would become a facile way for a plaintiff to circumvent the minimum contacts requirement of *International Shoe Co. v. Washington.* [FN14] For that reason, where a conspiracy is alleged and the defendants submit factual evidence controverting personal jurisdiction as to them, the plaintiff may not rely upon conclusory allegations in his pleading that are unsupported by evidence. [FN15] Such allegations will not be sufficient to overcome a motion to dismiss for lack of personal jurisdiction.

> FN14. 326 U.S. 310 (1945).

> FN15. *See Newspan, supra* note 5, at 20-21; *Carlton Invs., supra* note 12, at 29; *Nartex Consulting Corp. v. Watt,* D.C.Cir., 722 F.2d 779, 787 (1983) (Wald, J.) ("[b]ald speculations that defendants are alleged co-conspirators do not constitute the threshold showing needed to carry the burden of establishing personal jurisdiction"), *cert. denied,* 467 U.S. 1210 (1984); *Jarmuth v. Turetsky,* D.D.C., 815 F.Supp. 4, 6 (1993) (noting that the " 'bare allegation' of conspiracy or agency is insufficient to establish personal jurisdiction"); *Hasenfus v. Corporate Air Servs.,* D.D.C., 700 F.Supp. 58, 62 (1988) (noting the insufficiency of an "argument...based solely on conclusory statements and allegations that the nonresident defendants were co-conspirators.").

The Delaware contacts upon which Computer People relies to support its conspiracy theory of jurisdiction are (i) the two phone calls and one e-mail directed to Stanley at his Delaware office, and (ii) the incorporation of Best USA in Delaware. I find, for the reasons next discussed, that these contacts are insufficient to support personal jurisdiction in Delaware over Best PLC, Best Ltd., or Arello.

*7 First, assuming there was a conspiracy, there is no evidence (or even a claim) that any meaningful, "substantial act or effect" in furtherance of that conspiracy took place in Delaware. [FN16] As discussed below, the aforementioned Delaware contacts are insufficient to sustain personal jurisdiction over any of the defendants, because those contacts are not a sufficiently significant basis to support jurisdiction under § 3104(c). For this reason also, these contacts are also not "substantial acts or effects" in furtherance of the conspiracy that would support personal jurisdiction under the conspiracy theory.

> FN16. *See Instituto Bancario,* 449 A.2d at 225 (requiring for jurisdiction that a "substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state"); *Abajian v. Kennedy,* Del. Ch., C.A. No. 11425, mem. op. at 27, Allen. C. (Jan. 17, 1992) ("[T]he conspiracy theory...requires that a substantial act or substantial effect [occur] in the forum state in furtherance of the alleged conspiracy.").

Second, Computer People has furnished the Court with only conclusory and unsupported allegations that there was a conspiracy. [FN17] In the face of the contrary evidence offered by the defendants, the plaintiff has failed factually to support the conclusory allegation in its complaint that the defendants conspired to interfere tortiously with Computer People's contractual and business relationships. That is, there is no record *evidence* of any conspiracy among Arello, Best PLC, and Best Ltd. (through Bayfield and Cuff) to solicit Computer People employees. Accordingly, the plaintiff has failed to satisfy the first of *Instituto Bancario* 's five elements.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 8

1999 WL 288119 (Del.Ch.)

**(Cite as: 1999 WL 288119 (Del.Ch.))**

FN17. In fact, many of the critical allegations in their complaint are based solely "upon information and belief."

2. Arello's Delaware Contacts as a Computer People Employee

Despite the plaintiff's contrary argument, Arello's Delaware contacts as a Computer People employee between 1993 and 1996 are not sufficient to sustain general personal jurisdiction over him under 10 Del. C. § **3104(c)(4)**. That provision (to repeat) authorizes jurisdiction in cases where the defendant (or the defendant's agent) has a "general presence in the State," even if both the tortious act and the injury occur outside of Delaware. [FN18] The exercise of "general" jurisdiction under § **3104(c)(4)** requires a **higher** level of activity within the forum state than does the exercise of "specific" jurisdiction under (c)(3). [FN19] Specifically, subsection (c)(4) jurisdiction arises only "when a defendant has had contacts with this state that are so extensive and continuing that it is fair and consistent with state policy to require that the defendant appear here and defend a claim." [FN20]

FN18. *Applied Biosystems, Inc. v. Cruachem Ltd.,* D. Del., 772 F.Supp. 1458, 1469 (1991).

FN19. *United States v. Consolidated Rail Corp.,* D. Del., 674 F.Supp. 138, 145 (1987).

FN20. *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Prods., Inc.,* Del. Ch., C.A. No. 12036, mem. op. at 5-6, Allen, C. (July 10, 1991).

Computer People argues that Arello's extensive Delaware contacts during the 1993 to 1996 period while he was employed with Computer People, were extensive and continuing. The difficulty, however, is that to establish general jurisdiction under subsection (c)(4), the defendant must have *current* contacts with the forum state. [FN21] That Arello may have had substantial contacts with Delaware from 1993 to 1996 is not probative of whether this Court has general jurisdiction over him today, where (as here) (i) the cause of action does not arise out of those earlier contacts, and (ii) Arello's post-1996 Delaware contacts are too attenuated to support personal jurisdiction grounded upon his "general presence in this state." [FN22]

FN21. *See* § 3104(c)(4) (providing for jurisdiction when "person regularly *does* or *solicits* business, *engages* in any other persistent course of conduct in the State or *derives* substantial revenue from services, or things used or consumed in the State." (italics added)).

FN22. *Cf. J. Royal Parker Assocs. Inc. v. Parco Brown & Root, Inc.,* Del. Ch., C.A. No. 7013, mem. op. at 7, Berger, V.C. (Nov. 30, 1984) (finding that general jurisdiction was satisfied where defendant "regularly advertises in Delaware or carries on some other continuous course of activity in the state"); *Red Sail, supra* note 20, at 5-6 (holding that statutory provision will only apply where defendant "has had contacts with [Delaware] that are so extensive and continuing that it is fair and consistent with state policy to require the defendant [to appear and] defend a claim.").

3. The Two Phone Calls and One E-mail to Stanley at his Delaware Office

*8 Computer People next argues that the two telephone calls and one e-mail directed to Stanley at his Delaware office suffice to support personal jurisdiction over Best PLC, Best Ltd., and Arello under § 3104(c)(1). Again, I cannot agree.

Section 3104(c)(1) authorizes a court, in its discretion, to exercise jurisdiction over a non-resident defendant who "[t]ransacts any business or performs any character of work or service in" Delaware and whose cause of action arises from that transaction or work. Under that subsection, an act or acts must have occurred in Delaware, and the plaintiff's causes of action must

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                              Page 9
1999 WL 288119 (Del.Ch.)
**(Cite as: 1999 WL 288119 (Del.Ch.))**

arise from that act or acts. [FN23] To "transact business" in Delaware, a party must purposefully avail itself of the privileges and benefits of Delaware law. [FN24]

> FN23. *Applied Biosystems,* 772 F.Supp. at 1466.

> FN24. *Consolidated Rail Corp.,* 674 F.Supp. at 142; *Regency Housing & Drilling L.P.I. v. Cohen,* Del.Supr., C.A. No. 89C-DE-70, 1991 WL 190311, at *4, Gebelein, J. (Sept. 11, 1991).

As to Best PLC and Best Ltd., Computer People's argument fails because as a general matter telephone calls and an e-mail do not, in and of themselves, automatically constitute "transact[ing] business" within Delaware sufficient to invoke jurisdiction under § 3104(c)(1). [FN25] Even when the argument is considered in this specific factual context it does not work, because the two telephone calls and one e-mail cannot be a basis for the plaintiff's causes of action for tortious interference. The company does not claim these Delaware contacts induced Stanley to leave Computer People to work for Best USA; indeed, plaintiff concedes that Stanley remained a Computer People employee. Nor are these "contacts" relevant as evidence of a conspiracy because, for the reasons earlier discussed, the plaintiff's conspiracy theory is legally deficient.

> FN25. *See Fischer v. Hilton,* D. Del., 549 F.Supp. 389, 390 (1982) (finding that mere "phone calls do not constitute a transacting of business within the State of Delaware for purposes of subsection (c)(1)."); *Koster v. Automark Indus., Inc.,* 7th Cir., 640 F.2d 77, 79 (1981) (discussing minimum contacts, court found that telephone calls, in and of themselves, could not confer personal jurisdiction).

Computer People next claims that Arello is subject to personal jurisdiction under § 3104(a)(1) because Bayfield and Cuff's solicitation of Stanley on behalf of Best USA may be attributed to Arello as the president and CEO of Best USA. Stated differently, Computer People argues that Bayfield and Cuff were Arello's agents, and that therefore Bayfield's two telephone calls to Stanley and the e-mail to Stanley's Delaware office should be attributed to Arello.

This argument also lacks merit. Under the agency theory of personal jurisdiction, only acts of the agent that are directed by the principal may serve as a basis to assert jurisdiction over the principal. [FN26] The complaint here does not allege, nor does the factual record show, that Arello directed anyone--Bayfield included--to contact Stanley in Delaware to induce him to join Best USA. Therefore, Bayfield and Cuff's Delaware contacts with Stanley may not be imputed to Arello to establish personal jurisdiction over him under § 3104(c)(1). [FN27]

> FN26. *Applied Biosystems,* 772 F.Supp. at 1465-66.

> FN27. Although the plaintiff in its complaint invokes jurisdiction under 10 Del. C. § 3104(c)(3), they do not make any argument based upon subsection (c)(3) in their brief. Accordingly, that argument is deemed to have been abandoned.

4. The Incorporation of Best USA in Delaware

Finally, the plaintiff asserts that the act of incorporating Best USA in Delaware is enough, in and of itself, to establish jurisdiction over Best PLC and Best Ltd. The plaintiff relies on a line of cases that raise the issue presented here: whether the creation, ownership, and operation of a Delaware subsidiary (Best USA) is sufficient to invoke personal jurisdiction over the foreign parent (Best PLC). [FN28]

> FN28. *Shaffer v. Heitner,* 433 U.S. 186 (1977); *Sternberg v. O'Neil,* Del.Supr., 550 A.2d 1105 (1988); *Papendick v. Robert Bosch GmbH,* Del.Supr., 410 A.2d 148 (1979).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                   Page 10

1999 WL 288119 (Del.Ch.)

(Cite as: 1999 WL 288119 (Del.Ch.))

*9 In *Shaffer v. Heitner* ("*Shaffer* "), [FN29] the United States Supreme Court held that the mere ownership of stock in a Delaware corporation is not a sufficient "minimum contact" with Delaware to permit a Delaware court to exercise personal jurisdiction over a nonresident defendant consistent with due process. Thereafter, in *Papendick v. Robert Bosch GmbH* ("*Papendick* "), [FN30] the Delaware Supreme Court confronted the issue of whether the "mere ownership" principle of *Shaffer* precluded a Delaware court from exercising jurisdiction over a foreign corporation in a case where the cause of action was related to and arose out of the foreign parent's creation and operation of a Delaware subsidiary. Later, in a somewhat different context, the Delaware Supreme Court revisited the *Shaffer* issue in *Sternberg v. O'Neil* (" *Sternberg* "). [FN31]

    FN29. 433 U.S. 186 (1977).

    FN30. Del.Supr., 410 A.2d 148 (1979).

    FN31. Del.Supr., 550 A.2d 1105 (1988).

In *Papendick,* a German corporation (Bosch) formed a Delaware subsidiary (RBNA) to serve as a vehicle to acquire the stock of another company. The plaintiff filed a breach of contract action in Delaware. The action arose out of that stock acquisition transaction. Bosch argued that because its sole Delaware contact was its "mere" ownership of RBNA stock, under *Shaffer* that was an insufficient basis to establish personal jurisdiction. The Delaware Supreme Court disagreed. It held that Delaware could exercise jurisdiction over Bosch because the formation of RBNA was an integral part of the scheme of wrongdoing challenged in the complaint, and because in forming RBNA, Bosch had purposefully utilized the benefits and protections of Delaware law in connection with the challenged stock acquisition transaction. [FN32]

    FN32. *Papendick,* 410 A.2d at 152.

*Papendick* stands for the proposition that while the stock ownership of a Delaware subsidiary is not, without more, a sufficient contact upon which to predicate jurisdiction, that contact may be sufficient where the cause of action arises from the creation and operation of the Delaware subsidiary. In this case, Computer People alleges that the defendants incorporated Best USA in Delaware in furtherance of a conspiracy to cause key Computer People employees to desert the company. Accordingly, the plaintiff contends, the creation and operation of Best USA supports personal jurisdiction over Best USA for the same reason that the formation of RBNA supported jurisdiction over Bosch in *Papendick.*

I have already determined that the plaintiff's conspiracy theory argument fails, not as a matter of theory but as a matter of evidence. As earlier discussed, the plaintiff has not satisfied the conspiracy theory requirements for establishing jurisdiction, because there is no record evidence (save, perhaps, for Computer People's suppositions based on "information and belief") to support that conspiracy theory. Having rejected the conspiracy theory, the Court will not now reverse itself and permit plaintiff to use that theory to prop up its *Papendick /Sternberg* argument. The plaintiff has failed to show, in a procedurally proper way, that Best USA was created to further a conspiracy to steal Computer People's employees.

*10 Also misplaced is the plaintiff's reliance on *Sternberg.* There, a plaintiff brought a double derivative action against an Ohio corporation (GenCorp) and its wholly-owned Delaware subsidiary (RKO). Although no claim was alleged directly against the parent, GenCorp, the parent was named as a defendant because "in double derivative actions, both parent and subsidiary corporations are indispensable parties." [FN33] In upholding personal jurisdiction over GenCorp, the Supreme Court articulated two separate grounds for its decision. The first was that GenCorp had consented to general jurisdiction in the Delaware courts, because it had registered as a foreign corporation and had appointed a Delaware agent for service of process. [FN34] Second (and even though the Court could have ended its analysis at that point), it proceeded to uphold personal jurisdiction over GenCorp on the ground that its ownership of RKO

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d    Page 11
1999 WL 288119 (Del.Ch.)
(Cite as: 1999 WL 288119 (Del.Ch.))

was a sufficient minimum contact, since the basis for the double derivative action was GenCorp's operation of RKO. [FN35]

> FN33. *Sternberg,* 550 A.2d at 1124.
>
> FN34. *Id.* at 1115-16. The same is not true of the defendants in the instant case.
>
> FN35. *Id.* at 1116-26. Specifically, the Court held that "a foreign corporation cannot use the laws of this State to govern the operations of its subsidiary and then, in a suit relating to the operation of the subsidiary, claim that jurisdiction in Delaware offends traditional notions of fair play." *Id.* at 1121.

Commentators have interpreted *Sternberg* in two quite different ways. One interpretation views *Sternberg* as recognizing a narrow "double derivative suit exception" to the *Shaffer* rule. The other interpretation reads *Sternberg* more broadly, as expanding *Shaffer* to validate personal jurisdiction in Delaware over a majority stockholder of a Delaware subsidiary, in any suit "relating to the operation of the subsidiary." [FN36] In this case, the Court need not decide which interpretation is correct, because under either view the plaintiff's argument falls short.

> FN36. *See* Donald J. Wolfe, Jr. and Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* (1998), at § 3- 5(c)(3); William A. Voxman, *Jurisdiction Over a Parent Corporation in its Subsidiary's State of Incorporation,* 141 U. Pa. L.Rev. 327, 363-66 (1992); *see also Outokumpu, supra* note 6, at 728 (rejecting the broad interpretation of *Sternberg* by stating that the decision "cannot mean that Delaware courts may always exercise personal jurisdiction over the foreign parent of a Delaware subsidiary or any cause of action arising out of the operation or acts of that subsidiary, regardless of where the operative facts transpired or the parent's contacts with Delaware. Otherwise, mere ownership of a Delaware subsidiary would in practice subject a foreign parent to our jurisdiction, a result inconsistent with due process.").

Under the narrow ("double derivative suit exception") reading of *Sternberg,* the plaintiff's argument fails because the plaintiff here has not brought a double derivative action. Under the broad interpretation, the argument falters because Computer People has failed to show in a factually sufficient way that its causes of action arise out of Best PLC's operation, control, or ownership of Best USA. Although the complaint alleges conclusorily that all four defendants were involved in incorporating Best USA for wrongful purposes, all that the undisputed *evidence* shows is that Best USA "was established as a subsidiary of [Best PLC]...in Delaware exclusively for reasons of administrative convenience and corporate tax considerations." [FN37] That, without more, does not support this conclusory allegation for purposes of sustaining jurisdiction over Best USA's foreign corporate parent, Best PLC. That evidence is also insufficient to establish personal jurisdiction over Best Ltd., a separate subsidiary of Best PLC (and sister corporation of Best USA), which is not alleged to have played any role in incorporating Best USA in Delaware.

> FN37. Bayfield Aff. at 8.

\* \* \*

For the foregoing reasons, the Court determines that it lacks personal jurisdiction over defendants Arello, Best PLC, and Best Ltd., and grants their motion to dismiss under Rule 12(b)(2). Because Best USA will remain in the case as the sole defendant, I deny the defendants' 12(b)(6) motion with leave to renew based on briefs that take into account the Court's jurisdictional ruling. IT IS SO ORDERED.

1999 WL 288119 (Del.Ch.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.