## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Chih-Wen Chung,                              )
An individual and Taiwanese Citizen          )
      Plaintiff,                           )
vs.                                          )      Civil Action No. 04-1451 SLR
                                             )
Lumatec Industries, Inc.                     )
A corporation organized under the laws       )
of Texas;                                    )
      Defendant                            )
                                             )
_____ )

## OPENING BRIEF IN OPPOSITION TO DEFENDANT'S
## RENEWED MOTION TO DISMISS OR TRANSFER

Mark C. Gregory (DE Bar No. 3395)
Huntley & Associates, LLC
1105 N. Market St., P.O. Box 948
Wilmington, DE 19899-0948
(302) 426-0610
Attorneys for Plaintiff

Dated: April 14, 2005

i

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ....................................................................i

TABLE OF AUTHORITIES .............................................................ii

INTRODUCTION ............................................................................1

STATEMENT OF FACTS.................................................................2

FACTUAL BACKGROUND ............................................................8

ARGUMENT ................................................................................10

    I.     THE EXERCISE OF PERSONAL JURISDICTION
           OVER LUMATEC COMPORTS WITH
           DUE PROCESS. ....................................................10

    II.    LUMATEC'S CONDUCT FALLS SQUARELY
           WITHIN DELAWARE'S LONG-ARM
           STATUTE. .............................................................14
           A. Specific Jurisdiction Under § 3104 (c)(3). ........15

           B. General Jurisdiction Under § 3104 (c)(4).........17

    III.   IN THE ALTERNATIVE, CHUNG REQUESTS
           TRANSFER OF THE CASE RATHER THAN
           DISMISSAL...........................................................18

    IV.   LUMATEC'S REQUEST FOR ATTORNEYS FEES
           SHOULD BE DENIED…………………………..18

CONCLUSION ..............................................................................19

## TABLE OF AUTHORITIES

### U.S. SUPREME COURT CASES

Page(s)

*Asahi Metal Indus. Co. v. Superior Court of Cal.,*
480 U.S. 102 (1987)............................................................................ 11, 13

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)....................................................................................14

*In Re: Elonex Phase II Power Mgmt. Lit.,*
2003 U.S. Dist. LEXIS 7715 ........................................................................8

### U.S. APPELLATE COURT CASES

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
21 F. 3d 1558 (Fed. Cir. 1994) ............................................. 8, 10-14, 17, 18

*North American Philips Corporation v. American Vending Sales Inc.,*
35 F.3d 1576, 1579 (Fed. Cir. 1994)..................................................... 15-17

### U.S. DISTRICT COURT CASES

*Applied Biosystems, Inc. v. Cruachem, Ltd.*
772  F. Supp 1458 (D. Del. 1991) ..............................................................16

*In Re:Elonex Phase II Power Mgmt. Lit.,*
279 F. Supp 2nd 521 (D. Del. 2003).......................................................... 8, 12

*Motorola v. PC-Tel, Inc.*
58 F. Supp. 2d 349 (D.Del. 1999) ................................................8, 10-13, 17

Plaintiff, Chih-Wen Chung ("Chung") hereby responds to defendant, Lumatec Industries, Inc. ("Lumatec") Motion to Dismiss or Transfer.

## INTRODUCTION

On November 16, 2004 Plaintiff Chung filed this action against Defendant Lumatec alleging infringement of Chung's US Patent Nos. 5803584, 6511199 and D415944.  Prior to filing the action, counsel for Chung made repeated efforts to contact Defendant, having written to them, called them, and contacted them by e-mail. Defendant's were unwilling to provide Chung with basic information relating to their sales of the infringing article.  On December 18, defendant's contacted counsel for Chung by telephone to ask if the complaint would be dropped, but defendant did not agree to comply with Chung's initial requests for information.  On December 20, defendant's answer was due.  On December 22, counsel for defendant's contacted counsel for Chung and requested an extension.  Because defendant's were aware of this action and had failed to make any reasonable efforts to respond to plaintiff's attempts to initiate settlement negotiations, or to resolve the underlying cause of action in the months leading up to the filing of this complaint, no extension was granted.

On December 28, defendant filed a motion to dismiss for lack of personal jurisdiction, or in the alternative to transfer this case.  After a brief discovery period during which defendant failed to provide any documents relating to its sale of infringing articles to its retailers, defendant again asks for this Court to dismiss or transfer this action.

1

## STATEMENT OF FACTS

Plaintiff Chih-Wen Chung ("Chun") is the owner of US Patents 5803584, 651199 and D415944. Such fact is a matter of public record.

Defendant has made, sold or imported articles that infringe the above identified patents, and has sold those infringing articles to consumers and to retailers who have resold them to consumers within this District. Defendant's retailers continue to sell infringing articles into this State. Most of the retailers who resold defendant's infringing articles are internet based retailers, who advertise infringing product to consumers in this district, and who offer infringing products to consumers in this district. These resellers continue to sell infringing goods bearing defendant Lumatec's trademarks to consumers in Delaware (see Exhibits 1-2) and will continue to sell infringing product to consumers in this district unless stopped by this Court.

Defendant has declined to respond to plaintiff's discovery requests in that Defendant did not provide a list of retailers to supplement those retailers known to Plaintiff. Plaintiff requested a list of Defendant's retailers who bought infringing articles from Defendant, but received no information responsive to this request. In response to Interrogatory No. 1 requesting a list of defendant's distributors and distributors reselling products, Defendant replied that it has no distributors, and that it has no distributors reselling product. This statement is false and is premised on the technicality that "distributors reselling products" are not the "retailers" that defendant sells its product to. Defendant sells product to, among others, Container Store, as well as www.promopeddler.com, www.alwaysbrilliant.com www.solutionscatalog.com. Solutions Catalog, a retail internet and direct mail catalog, continues to advertise and sell

2

"Lumatec" brand "Octopus" tools that infringe the Chung patents.  Plaintiff has a receipt

for the sale of one such article, sold to a Delaware resident, attached hereto as Exhibits 1-

2.  Given that Defendant has provided infringing articles to businesses that currently sell

infringing articles within this State, it is difficult to comprehend Defendant's responses to

Plaintiff's interrogatories.  When asked to "identify [a]ll of Defendant's distributors" and

"distributors reselling products" defendant replied that it "has no distributors" and that it

"does not have any distributors reselling products."  The evidence previously provided by

plaintiff, including the web sites previously identified by plaintiff, are those of business

entities selling defendant's "Lumatec" branded articles that infringe the Chung patents.

Solutions Catalog recently sold an infringing article to a Delaware resident, and continues

to advertise defendant's infringing articles on its www.solutionscatalog.com web site,

and in its direct mail catalog.  Knowing that these distributors reselling products have the

evidence which plaintiff requires to further demonstrate that jurisdiction is proper,

defendant has chosen not to disclose such information.

Given the reasonableness of Plaintiff's discovery request, and given Defendant's

unwillingness to cooperate with Plaintiff's legitimate requests, both prior to the intitiation

of this action and during discovery, defendant should not be allowed to hide behind its

network of distributor or retailers to avoid being before this Court.  Defendant has

general contacts within this state such that jurisdiction based on those contacts would be

considered reasonable if there were an issue with one of those products.  Accordingly, it

is not unreasonable for Defendant to anticipate being require to be present in Delaware

for litigation.

3

Defendant admits that it advertised infringing product in its "Logolights by Lumatec" catalog, and on the internet at www.logolights.com. Page 17 of its 2004 Catalog shows the Lumatec Octopus, which is an exact copy of the article described in Mr. Chung's patents. The catalog lists prices for the infringing Octopus based on volume purchased and delivery time, and provides a product code (TL-131) for the infringing article to enable ordering. Despite the relevance of this document and of providing a list of Defendant failed to provide any documents relating to where the catalog was sent, stating that it "did not keep any records of the identities of the parties to whom the catalog was mailed." Defendant's Answer to Plaintiff's Interrogatory No 2. Given that plaintiff has identified over 20 consumers and retailers who have bought thousands of dollars worth of its products in Delaware, it is reasonable to assume that at least these retailers received catalogs. Furthermore, specific references in the documents produced by defendant, which appear to be phone logs documenting communications with Delaware customers of defendant, reveal that several unnamed "promotions" or promos were sent to these customers, and that catalogs were sent to these customers. These promotions could have included specific promotions for the infringing article sold by Defendant. As defendant cannot determine what it did with respect to these Delaware customers, it is unfair to place that burden on Plaintiff, who has no access to the documents that are controlled by Defendant but not produced.

Defendant admits that it exercises no control, and places no restrictions on where its distributors/resellers/retailers advertise, promote or sell the infringing articles supplied by Defendant. Response to Interrogatory 13: "Identify all means of control excercised by Defendant over the resale of accused products by defendant's customers, retailers and

4

wholesalers."  ANSWER:  Defendant neither has nor excercises any control over the resale of Defendant's accused products by any customer or retailer."

Defendant admits that its infringing product was sold by, among others, the Container Store, but claims the Container Store has no locations in Delaware.  Despite the fact that the Container Store may have no locations in Delaware, it solicits consumers from Delaware through its web site, and offers to sell products to consumers through its web site, and actually sells products to Delaware residents.  Container Store also has an "800" number to allow for callers from Delaware to call without being charged for long distance.  Defendant cannot speak for the Container Store, and has not stated that the Container Store did not sell to consumers in Delaware.

In addition to the Container Store, defendant admits to selling the infringing articles to independent retailers.  These independent retailers include several internet based retailers who advertise to Delaware consumers and who send catalogs to Delaware consumers.  Visitors to any of the independent retailers web sites can view and purchase the infringing article, which prominently displays defendant's "Lumatec" trademark, despite defendant's claim that it "does not participate in any joint marketing of the product with the retailers to whom they are sold." (Altman Decl., paragraph 4).  This claim is made even more hard to understand when one considers defendant's press releases touting its sales of the infringing article or the picture in its Logolights catalog of an infringing article bearing the American Airlines trademark.  See page 17 of 2004 Logolights catalog.

The independent retailers who re-sold the infringing articles that were purchased from defendant include www.promopeddler.com, www.alwaysbrilliant.com

5

www.solutionscatalog.com and www.containerstore.com. All of these retailers target Delaware consumers over the internet and by direct mail, offering pictures of the infringing articles, a description thereof, a price and a means for ordering the infringing articles.

Defendant cannot hide behind its distribution network, claiming it does not know where the infringing products are sold once they are shipped to the "independent retail stores." If defendant's arguments were accepted, any defendant could avoid personal jurisdiction in any particular state by placing goods in the stream of commerce through resellers in another state, then claiming not to know where the resellers do business. Such resellers could then direct their advertisements and make sales to consumers in all of the states without targeting any one state in particular. This is not the case.

Defendant offered infringing articles for sale on its web site, www.lumatec.com despite its assertions to the negative. Plaintiff became aware of Defendant's actions in part by locating them on the internet. Plaintiff found articles on www.PRWeb.com that are press releases from Defendant. In the press releases, previously submitted as Exhibit 1, defendant makes specific note of its "hot selling" item the "Octopus" screwdriver. The Octopus screwdriver is the article that infringes Mr. Chung's patents. Defendant released more than one such press release, touting the "Octopus" screwdriver. Defendant clearly prints its corporate name and trademark, "Lumatec," on the infringing "Octopus" screwdrivers it sells, both on articles sold directly to consumers, and on articles sold to other retailers.

Defendant admits that its web site solicits orders directly from consumers. There are consumers in Delaware who have access to this web site, and thus it is reasonable and

6

foreseeable that Defendant would be subject to jurisdiction here.  Defendant advertised its sale of infringing articles by internet press release, and such press was noticed by consumers on a national scale, as evidence by a feature on CBS News. (See Exhibit F, evidence of the infringing articles being featured as "stocking stuffers" on CBS News, a show that clearly targets Delaware consumers.)  The CBS News promotion is also available on the internet, at www.cbsnews.com/stories/2003/12/15/earlyshow/contributors/lauriehibberd/main5886.

Lumatec's Motion to Dismiss and its depiction of itself are overly simplistic, and its description of the jurisdictional consequences of its sales activities is simply wrong. Lumatec's President declares that 99% of Lumatec's annual sales of the infringing product are to the Container Store and other small retailers and only 1% is sold via the internet.  Even if these allegations are true, and Chung has not yet tested the figures in discovery, they in no way preclude this Court from asserting personal jurisdiction over Lumatec.  Lumatec failed to provide any documents in support it allegations, despite Plaintiffs specific requests for such documents.

A more accurate depiction of Lumatec's jurisdictional connections to Delaware would include the following facts:

-    For years, Lumatec has earned thousands of dollars knowingly and willfully entering contracts and selling infringing hand tools to United States retailers who offer the hand tools for sale to Delaware consumers, and who resell the hand tools to consumers in Delaware;

-    Lumatec also sells their infringing hand tools to Delaware consumers via their own websites and re-seller websites;

7

-       Lumatec's interactive website encourages Delaware consumers to order
the infringing articles via the internet.

Presented with closely analogous facts, both the Federal Circuit and this Court
have found the exercise of personal jurisdiction appropriate. *See Beverly Hills Fan co. v.
Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994); *Motorola Inc. v. PC-Tel, Inc.*, 58
F. Supp. 2d 349 (D.Del. 1999) *In re: Elonex Phase II Power Mgmt. Lit., 2003 U.S. LEXIS
7715)*. The Court should reach the same conclusion here. Even without the benefit of
discovery, Chung believes it has demonstrated the propriety of exercising personal
jurisdiction over Lumatec. Because Lumatec has failed to provide reasonable responses
to Plaintiff's discovery request, time constraints, and the fact that it is not reasonable to
expect Mr. Chung to have the resources to compel cooperation by all of Lumatec's
customers retailer and resellers, or to determine who they are without the cooperation of
Defendant, defendant's motion to dismisss must be denied.


## FACTUAL BACKGROUND


As noted in Chung's complaint, Lumatec continued to distribute, manufacture,
sell and/or import infringing articles even after being notified by counsel for Chung that
the articles were infringing Chung's patents. Lumatec's infringing articles are still being
offered for sale and sold in Delaware by the resellers identified above. Lumatec knew
and was notified that it did not have the permission of Chung to import, make or sell any
of the patented articles, yet it continued to knowingly infringe the patents even after
being notified. Lumatec was asked to cease such infringing activities and to provide

8

Chung with sales data and other information relating to its infringing sales, but refused to comply and has continued to refuse to comply, despite the fact that such requests are reasonable and related to jurisdiction.

Lumatec continued to infringe Chung's patents while belatedly attempting to negotiate a contract with Chung that would give Lumatec the ability to operate in the US under license from Chung.  These attempts at negotiating a license did not bear fruit, as Lumatec has failed to provide the information that Chung had requested, namely, the number of infringing units sold and the price of each unit sold.

At no time did Lumatec have an agreement with Chung, although it knew the article it was selling was covered by Chung's US patents.

Lumatec cannot pretend that they had no idea that the hand tools would end up in several states including Delaware.

ARGUMENT

The Court may properly exercise personal jurisdiction over Lumatec because its regular sales activities (1) constitute such "purposeful minimum contacts" with Delaware that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice," *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (internal quotation and citation omitted); and (2) place Lumatec squarely within the scope of Delaware's long-arm statute, Del. Code Ann., title 10, § 3104.

I.      THE EXERCISE OF PERSONAL JURISDICTION OVER LUMATEC
        COMPORTS WITH DUE PROCESS.

To decide the present motion, the Court need look no further than the Federal Circuit's decision in *Beverly Hills fan* and this court's own decision in *Motorola Inc. v. PC-Tel, Inc.*, 58 F. Supp 2d 349 (D. Del. 1999).  In *Beverly Hills Fan*, the Federal Circuit addressed the question of whether Ultec, a People's Republic of China corporation with a manufacturing facility in Taiwan, was subject to personal jurisdiction in Virginia where its "sole contact with the forum resulted form indirect shipments through the stream of commerce." *21 F.3d* at *1564* (emphasis added).  Although Ultec's president asserted that the company had no Virginia assets, employees or license to do business, the Federal Circuit ruled that Ultec "purposefully shipped the accused fans into Virginia through an established distribution channel.  The cause of action for patent infringement is alleged to rise out of these activities.  No more is usually required to establish specific jurisdiction." *Id*. At 1560, 1565.

10

Here, like Ultec's president, Lumatec's president states in his declaration that defendant makes no direct sales to consumers in Delaware, and that Lumatec has no Delaware office or subsidiary. However, defendant has admitted sales in Delaware and provided invoices to over 20 Delaware residents totaling thousands of dollars. These Delaware individuals saw either defendant's catalog, which features the infringing articles, or defendant's web sites, which also advertise and promote the infringeing articles. Defendant admits to selling the infringing article to independent resellers or retailers, and admits to selling to the Container Store, all of which target consumers in Delaware and sell to consumers in Delaware. Lumatec's actions have for many years been the first link in precisely the kind of indirect distribution chain that the *Beverly Hills Fan* court found sufficient to establish personal jurisdiction. Lumatec sells its hand tools to the Container Store, who offers them via its web site to consumers in Delaware, and sells the infringing articles to consumers in Delaware. Defendant also distributes the infringing articles to retailers with internet web sites accessible to, and targeting Delaware consumers, who then sell the infringing articles to Delaware consumers. "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 17 (1987) (Brennan, J.) (Emphasis added). Because Lumatec placed its hand tools "in the stream of commerce" knowing "the likely destination of the products, its conduct and connections with [Delaware are] such that

11

[Lumatec] should reasonably have anticipated being brought into court [here]." *Beverly Hills Fan*, 21 F.3d at 1566.

This Court's *Motorola* and *Elonex* decisions are likewise directly on point. In *Motorola*, the Court described the accused infringer's sales activities as follows: AltoCom does not (and, it seems, cannot) contest the fact that its soft modems are integrated into a variety of consumer electronic products which are manufactured by well-known multi-national corporations like Compaq, Phillips, Samsung, Sharp, Sony, and the like. These goods are then put into world-wide distribution networks which place them for sale in equally well-known retail stores such as Caldor, Circuit City, CompUSA, OfficeMax, Sears, Service Merchandise, and others—all of which have outlets in Delaware. *Motorola* 58 F. Supp. 2d at 352. AltoCom also maintained an interactive website through which customers could download software and obtain customer support. *Id.* Like Lumatec, AltoCom argued that personal jurisdiction was improper because it had no Delaware assets and never had any direct sales to or contact with Delaware. *Id.* Nevertheless, relying on *Beverly Hills Fan*, the *Motorola* court flatly rejected AltoCom's arguments and held that exercising jurisdiction comported with due process. *Beverly Hills Fan* at 355-56

Lumatec's activities are nearly identical to AltoCom's, including distribution to some of the same retail stores. Like AltoCom, Lumatec maintains an interactive website through which customers in Delaware and elsewhere can download pictures of the infringing article, can purchase the infringing article, and can obtain support and customer service regarding the infringing article. *Id.*

Lumatec's pleadings conclude that the complete absence of an office or store by Lumatec within Delaware precludes jurisdiction. This is not accurate. On similar facts to those in this case the *Motorola* court reached the exact opposite conclusion. [B]y contracting with entities that have a market presence both nationally and world-wide, AltoCom can hardly be hear to complain that it did not know the likely destination of some of its products would include this forum. Indeed, the company… sells its products… with full knowledge that these goods will then be placed into established distribution channels that service the State of Delaware. Id at 355.

Lumatec's undeniably substantial and regular sales of infringing articles into Container Store and other retailers' national distribution networks constitute "purposeful minimum contacts" with Delaware, even if no Lumatec employee has ever set foot in the State.[1] These contacts are all the more intentional because they continued unabated even after Chung, on August 25, 2004, gave Lumatec additional written notice of its infringement. *See Beverly Hills Fan*, 21 F.3d at 1567-68 (holding that shipping allegedly infringing product after notice of infringement is intentional conduct directed at the forum). Lumatec cannot honestly claim it had no fair warning that its activities might subject it to litigation in Delaware.[2]

Finally, this is not one those rare cases where, despite purposeful contacts, it

---

[1] *See Asahi*, 480 U.S. at 119-20 ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with expectation that they will be purchased by consumers in the forum State." (emphasis in original; citation omitted)

[2] *See e.g., Kollmorgen Corp. v. Yaskawa Elec. Corp.*, 169 F. Supp.2d 530, 534 (W.D. Va. 1999)("This ostrich-like stance is untenable under the law. While it may be true that [defendant] deliberately takes steps to keep itself in the dark about [its customers'] marketing strategies, it cannot do so to escape jurisdiction."); *Flue Corp. v. Fine Instr. Corp.*, No. C94-573C, 1994 WL 739705. at *5 (W.D. Wash. Oct 6, 1994)("The court may make reasonable inference that the sale of a large number of devices to a firm with a nationwide distribution network will generally result in the sale – poor at least the use – of one of those devices in the forum state.").

would be unreasonable to assert jurisdiction because Delaware's and plaintiff's interests

is adjudicating the dispute here are "so attenuated that they are clearly outweighed by the

burden or subjecting the defendant to litigation within the forum."  Id. 1568 The Beverly

Hills Fan court held that Virginia had substantial interests in (1) discouraging injuries in

the state, including patent infringement injury; and (3) cooperating with other states to

provide a forum for efficiently litigating plaintiff's cause of action, so as to spare other

states and the defendant from the burden of multiple suits. *Beverly Hills Fan* 21 F.3d at

1567-68.  Delaware has the same interest here.   Delaware is certainly an efficient place

to resolve the question of Lumatec's liability.  And, as the Beverly Hill Fan court noted,

"progress in communications and transportation" have made "the defense of a lawsuit in

a foreign tribunal less burdensome." *Id* at 1569 (internal quotation and citation omitted).

Any burden on Lumatec "is not sufficiently compelling to outweigh [Elonex's] and

[Delaware's] interests." *Id.* See also *Burger King Corp. v. Rudzewicz*, 471 U.S.  462, 477

(1985)(must be a "compelling case" of unreasonableness to violate due process).

Lumatec has purposefully availed itself of the privilege of conducting activities in

Delaware and the exercise of specific or general personal jurisdiction here will not violate

due process.

## II.  LUMATEC'S CONDUCT FALLS SQUARELY WITHIN DELAWARE'S LONG-ARM STATUTE.

In its memorandum, Lumatec makes the conclusory statement that none of

provisions of the Delaware long-arm statue apply to this case, apparently based entirely

on Mr. Altman's declaration, which contains many mischaracterizations of the facts.

Mr. Altman's attempts to distance Lumatec from Delaware do not exhaust the inquiry.

Lumatec's regular and ongoing placement of substantial numbers of infringing articles

14

into distribution channels that lead to Delaware subjects it to jurisdiction under Delaware's long-arm statute. Lumatec regularly solicited business from Delaware consumers by offering the infringing articles for sale, promoting the infringing articles by internet web pages and internet PR releases, and by supplying other retailers with the infringing articles and advertising with them. Accordingly, jurisdiction is proper.

Lumatec argues that it has not acted in a way that would be within the scope of the Delaware long arm statute. As discussed herein, Lumatec regularly and continuously solicited business in Delaware by offering the infringing articles for sale on its interactive web site, and by selling infringing articles to retailers who target and sell to Delaware consumers. Lumatec's conduct is relevant to two subsections of § 3104:

[A] court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent: (3) Causes tortuous injury in the State by an act or omission in this State; [or] (4) Causes tortuous injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or devices substantial revenue form services, or things used or consume in the State[.]
Del.Code Ann., tit 10, § 3104(c)(3)-(4).


A.    Specific Jurisdiction Under § 3104(c)(3).

This subsection requires both an act and an injury in Delaware. Lumatec's activities satisfy both requirements. In *North American Philips Corporation v. American Vending Sales Inc.,* 35 F.3d 1576, 1579 (Fed. Cir. 1994), the Federal Circuit held that the out-of-state: free on board" sale of infringing goods that made their way into the forum

15

state via the stream of commerce constituted the commission of a tortuous act in the

forum state for purposes of both federal law and the state long-arm statue.[3] Beginning

with the premise that "the 'tort' of patent infringement occurs where the offending act is

committed and not where the injury is felt," *North American Philips Corporation v.

American Vending Sales Inc.,* 35 F.3d 1576, 1579 (Fed. Cir. 1994),, the court concluded

that an out-of-state infringing sale could also be deemed a tortious act in a forum where

the infringer knew of the infringing products was destined to go.  The infringer,

moreover, committed an entirely new tortious act in the forum if the product was resold,

if the infringer was aware it might be resold there. *Id* at 1580 (resale would create "a

distinct liability for contributory infringement").  Clearly, given the PR releases and the

feature on CBS News and www.cbsnews.com, Lumatec was aware its products might be

resold in Delaware.  Furthermore, Lumatec did nothing to preclude Delaware residents

from purchasing the infringing articles directly from its web site.  Even if such residents

were not in Delaware at the time the purchase was made, the damage was done here, and

the solicitation was done here.  In *North American*, the court reasoned that, because the

defendants "voluntarily placed a substantial quantity of infringing articles into the stream

of commerce conscious that they were destined for Illinois," the defendants were "parties

to the importation." *Id* ("Surely the reasonable market participant in the modern

commercial world has to expect to be hulled into courts of that state, however distant, to

answer for an liability based at least in part on that importation.").

Chung is also injured when Lumatec's infringing articles are sold in Delaware, or

even if such infringing articles are sold to consumers in nearby states who may have

---

[3] The *North American* case involved the Illinois long-arm statute.  Because § 3104 was patterned on the Illinois long-arm statute, courts in Delaware have relied on decisions interpreting the Illinois statute.  *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772F. Supp. 1458, 1468 (D. Del. 1991).

alternately purchased the goods in Delaware due to a lack of a sales tax. "[E]conomic

loss occurs to the patent holder where the infringing sale is made because the patent

owner loses business there [or]. . . potential revenue through licensing or other

arrangements." *Beverly Hills Fan*, 21 F.3d at 1571 ("[T]he situs of the injury is the

location, or locations, at which the infringing activity directly impacts on the interest of

the patentee, here the place of the infringing sales in Virginia.") Accordingly, under

*North American* and *Beverly Hills Fan*, Lumatec has committed acts in Delaware causing

tortious injury to Chung in Delaware.


B.    General Jurisdiction Under § 3004(c)(4).

This subsection reaches "the maximum parameters of the due process clause."

*Motorola*, 58 F. Supp 2d at 356 (internal quotation and citation omitted). As such, it

"reach[es] as many extra-territorial defendants as the Due-Process Clause will allow,"

and the customary two-step jurisdictional inquiry "folds into one." *Id* at 356 n.9 (internal

quotation and citation omitted). As in *Motorola*, the same sales activities that make it fair

and just, and thereby consistent with due process, to exercise personal jurisdiction over

Lumatec – namely, Lumatec's intentional sales of infringing articles using nationwide

distribution channels, its interactive website – bring Lumatec within the scope of §

3104(c)(4). As noted above, Lumatec's infringing sales constitute tortious acts inside and

outside of Delaware. Lumatec directly infringes Chung's patents by selling to Container

Store and the other independent retailers, and commits contributory infringement when

the infringing articles are resold. Lumatec's knowing and purposeful shipments of

monitors through established distribution channels – made all the more intentional by

17

Lumatec's continuing to do so despite actual notice of its infringement and this litigation

– satisfies the act requirement of §3104(c)(4). *Beverly Hills Fan*, 21 F. 3d at 1571.

Because Lumatec undeniably derives substantial review from these activities it is subject

to jurisdiction under § 3104(c)(4).


III.    IN THE ALTERNATIVE, CHUNG REQUESTS TRANSFER OF THE
CASE RATHER THAN DISMISSAL.

Chung believes he has made a sufficient showing to justify the Court's exercise of

personal jurisdiction over Lumatec.  If the Court disagrees, however, Chung requests that

the case be transferred to Texas.  Chung has no preference as to a specific district in

Texas.


IV.    LUMATEC'S REQUEST FOR ATTORNEYS FEES SHOULD BE
DENIED

Plaintiff's decision to file in Delaware is based on defendant's actions in this state

and on the actions of defendant's retailers.  Such action is clearly not frivolous or

without support, as defendant's retailers currently sell infringing product within the State.

Given that such action is presently occurring, it is reasonable to assume that it occurred in

the past.  Defendant could have avoided this issue by ceasing its infringing activities

when asked, and by providing details regarding its infringing activities.  When threatened

with litigation in this District, defendant chose to litigate rather than engage in settlement

negotiations.  Accordingly, defendant is not entitled to an award of attorney's fees.


18

## CONCLUSION

Fair play and substantial justice are the touchstones of the jurisdictional inquiry. Lumatec has failed entirely to show that it would be unfair to litigate Chung's infringement claims in this district.  It is however, manifestly unfair and unjust for Lumatec to profit substantially — as it undeniably has — from its use of national distribution channels while pretending it knows absolutely nothing about what happens beyond its doors.  The Court should therefore deny Lumatec's motion.

_____
Mark C. Gregory, DE Bar No. 3395
Huntley & Associates, LLC
Attorneys for Plaintiff

Dated: April 14, 2005